# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1037

_____

Anarian Chad Jackson,               *
                                        *

           Appellant,           *
                                        *   Appeal from the United States

           v.                 *   District Court for the
                                        *   Eastern District of Arkansas.

Larry Norris, Director, Arkansas   *
Department of Corrections,       *
                                        *

           Appellee.            *

_____

Submitted: May 11, 2009
Filed: July 30, 2009

_____

Before WOLLMAN,  JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Anarian Chad Jackson was convicted of first-degree murder and sentenced to life in prison for the 2001 killing of Charles Raynor.  In 2006, Jackson filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Arkansas.  The court[1] denied Jackson's petition, and we granted a certificate of

_____

[1]The Honorable J. Thomas Ray, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was referred pursuant to the consent of the parties.  See 28 U.S.C. § 636(c)(1).

appealability on whether Jackson was prejudiced by a state expert's testimony that Jackson was a "slinger" and a "banger." We now affirm.

## I.

Jackson was the leader of a Little Rock, Arkansas, gang known as the West Side Posse, and Raynor led the rival Monroe Street Hustlers. The two gangs fought frequently over drugs, women, and territory. On January 5, 2001, Jackson and Chris Bush, a fellow gang member, were riding in a friend's vehicle when they spotted Raynor talking on a cordless phone in his front yard. Jackson remarked, "There go Little Chuck [Raynor], man. He out there slipping. We need to go on and get him." Jackson instructed the driver to park behind the house, and Jackson and Bush exited the vehicle carrying a .40 caliber semiautomatic handgun and a .357 Magnum, respectively. They approached Raynor from an alley running alongside the house and began firing. One of the bullets struck Raynor in the head, killing him.

Bush pled guilty to the murder and subsequently provided a firsthand account of the shooting at Jackson's trial. Among other things, he stated that the .40 caliber handgun was obtained from a "dope house" where members of the West Side Posse frequently hung out. An expert for the prosecution testified that four .40 caliber casings were found at the scene and that the bullet that killed Raynor could have been fired by a .357 Magnum, but not the .40 caliber handgun.

Little Rock Police Detective Todd Hurd testified as a gang intelligence expert. Detective Hurd stated that the feud between the West Side Posse and the Monroe Street Hustlers was the worst gang rivalry he had encountered, and he noted that it often provoked violent conflicts. Hurd also explained to the jury the significance of the terms "slinger" and "banger":

"Slinger" is a street term, or "slanger" as it's commonly referred to, is a person who deals dope. They're slinging dope on the streets. And a "banger" is a person that's referred—a gang member that is referred to as really being into the gang rivalries if you will; shooting at, having conflict with other gangs and other gang members.

Later, when asked if Jackson was a slinger or a banger, Hurd stated that "[Jackson] is both. He's done both."

The prosecution introduced statements from three other individuals, all of whom had given sworn testimony in front of a grand jury but refused to cooperate when questioned at Jackson's trial. Markevious King and Rodrick Pennington, both members of the West Side Posse, identified Jackson as the leader of the gang and described instances where he had encouraged or ordered individuals to shoot members of the Monroe Street Hustlers. King also testified to dealing cocaine while he was in the gang. Takesha Griffin, Jackson's first cousin, gave a tape-recorded statement that Jackson was the leader of the West Side Posse and that he had admitted to killing Raynor. When called to testify, King, Pennington, and Griffin all asserted that they could not remember their prior grand jury testimony or denied making any statements incriminating Jackson.

Following his conviction, Jackson appealed to the Arkansas Supreme Court, arguing, among other things, that he was prejudiced by Detective Hurd's statement that he was a slinger and a banger. According to Jackson, the statement was hearsay and inadmissible character evidence. He contended that the trial court's failure to exclude that evidence violated his right to a fair and impartial jury trial under the Sixth and Fourteenth Amendments. The court concluded that although the testimony was improperly admitted, it did not prejudice Jackson because it was cumulative and the evidence of Jackson's guilt was strong. Jackson v. State, 197 S.W.3d 468, 475 (Ark. 2004). Justice Hannah dissented from the majority's holding that the error was harmless, concluding that the slinger reference was not cumulative because there was

insufficient evidence in the record to show that Jackson dealt drugs. Id. at 484-86 (Hannah, J., dissenting).

## II.

We review the district court's conclusions of law *de novo* and its factual findings for clear error. Palmer v. Clarke, 408 F.3d 423, 428 (8th Cir. 2005). Under the Antiterrorism and Effective Death Penalty Act, a writ of habeas corpus may be granted only if the relevant state court decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2). The standard for reviewing state trial errors under § 2254 is significantly narrower than that which we apply on direct review. See Fry v. Pliler, 551 U.S. 112, 121-22 (2007). On direct review, constitutional error requires reversal unless the reviewing court concludes that the error was harmless beyond a reasonable doubt. See id. at 114 (citing Chapman v. California, 386 U.S. 18 (1967)). In a habeas proceeding, however, federal courts may not grant relief unless the state trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Id. at 116 (quoting Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)). Our review is therefore more circumscribed than the harmless error analysis undertaken by the Arkansas Supreme Court. The sole question before us is whether the state expert's slinger and banger testimony had a substantial and injurious effect on the jury's verdict. We conclude that it did not.

The slinger and banger reference was cumulative of other evidence suggesting that Jackson was violent and involved in illegal drug trade. Jackson was repeatedly identified as the leader of a gang in which violence and drug dealing were commonplace. King and Pennington both claimed that Jackson ordered attacks on the Monroe Street Hustlers, and Bush testified that the West Side Posse frequented a dope

-4-

house. Although there was little evidence that Jackson personally dealt drugs, his role as a leader, combined with the ubiquity of narcotics dealing within the gang, was enough to make the slinger comment cumulative.

Moreover, the evidence of Jackson's guilt was strong. Bush's firsthand account of the shooting was corroborated by forensic evidence showing that two weapons were used to commit the murder. In her recorded statement, Griffin told the police that Jackson admitted to substantially the same details that Bush provided. And Jackson had both the means and motive to kill Raynor. Given these circumstances, we cannot say that Detective Hurd's comments had a substantial impact on the jury's verdict. Accordingly, the district court did not err in denying Jackson's petition for a writ of habeas corpus.

The judgment is affirmed.[2]

_____

[2]Although Jackson raised additional arguments in his reply brief and supplemental briefs, our review is limited to the issue set forth in the certificate of appealability. See Chang v. Minnesota, 521 F.3d 828, 831 (8th Cir. 2008).