Justice Scalia
delivered the opinion of the Court.
We decide whether a federal habeas court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the “substantial and injurious effect” standard set forth in Brecht v. Abrakamson, 507 U. S. 619 (1993), when the state appellate court failed to recognize the error and did not review it for harmlessness under the “harmless beyond a reasonable doubt” standard set forth in Chapman v. California, 386 U. S. 18 (1967).
I
After two mistrials on account of hung juries, a third jury convicted petitioner of the 1992 murders of James and Cynthia Bell. At trial, petitioner sought to attribute the murders to one or more other persons. To that end, he offered testimony of several witnesses who linked one Anthony Hurtz to the killings. But the trial court excluded the testimony of one additional witness, Pamela Maples, who was *115 prepared to testify that she had heard Hurtz discussing homicides bearing some resemblance to the murder of the Bells. In the trial court’s view, the defense had provided insufficient evidence to link the incidents described by Hurtz to the murders for which petitioner was charged.
Following his conviction, petitioner appealed to the California Court of Appeal, arguing (among other things) that the trial court’s exclusion of Maples’ testimony deprived him of a fair opportunity to defend himself, in violation of Chambers v. Mississippi, 410 U. S. 284 (1973) (holding that a combination of erroneous evidentiary rulings rose to the level of a due process violation). Without explicitly addressing petitioner’s Chambers argument, the state appellate court held that the trial court had not abused its discretion in excluding Maples’ testimony under California’s evidentiary rules, adding that “no possible prejudice” could have resulted in light of the “merely cumulative” nature of the testimony. People v. Fry, No. A072396 (Ct. App. Cal., 1st App. Dist., Mar. 30, 2000), App. 97, n. 17. The court did not specify which harmless-error standard it was applying in concluding that petitioner suffered “no possible prejudice.” The Supreme Court of California denied discretionary review, and petitioner did not then seek a writ of certiorari from this Court.
Petitioner next filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of California, raising the aforementioned due process claim (among others). The case was initially assigned to a Magistrate Judge, who ultimately recommended denying relief. He found the state appellate court’s failure to recognize error under Chambers to be “an unreasonable application of clearly established law as set forth by the Supreme Court,” App. 180, and disagreed with the state appellate court’s finding of “no possible prejudice.” But he nevertheless concluded that “there ha[d] been an insufficient showing that the improper exclusion of the testimony of Ms. Maples had a *116 substantial and injurious effect on the jury’s verdict” under the standard set forth in Brecht. App. 181-182. The District Court adopted the Magistrate Judge’s findings and recommendations in full, and a divided panel of the United States Court of Appeals for the Ninth Circuit affirmed. We granted certiorari. 549 U. S. 1092 (2006).
II
A
In Chapman, supra, a case that reached this Court on direct review of a state-court criminal judgment, we held that a federal constitutional error can be considered harmless only if a court is “able to declare a belief that it was harmless beyond a reasonable doubt.” Id., at 24. In Brecht, supra, we considered whether the Chapman standard of review applies on collateral review of a state-court criminal judgment under 28 U. S. C. § 2254. Citing concerns about finality, comity, and federalism, we rejected the Chapman standard in favor of the more forgiving standard of review applied to nonconstitutional errors on direct appeal from federal convictions. See Kotteakos v. United States, 328 U. S. 750 (1946). Under that standard, an error is harmless unless it “‘had substantial and injurious effect or influence in determining the jury’s verdict.’” Brecht, supra, at 631 (quoting Kotteakos, supra, at 776). The question in this case is whether a federal court must assess the prejudicial impact of the unconstitutional exclusion of evidence during a state-court criminal trial under Brecht even if the state appellate court has not found, as the state appellate court in Brecht had found, that the error was harmless beyond a reasonable doubt under Chapman.[1]
*117 We begin with the Court’s opinion in Brecht The primary reasons it gave for adopting a less onerous standard on collateral review of state-court criminal judgments did not turn on whether the state court itself conducted Chapman review. The opinion explained that application of Chapman would “underminfe] the States’ interest in finality,” 507 U. S., at 637; would “infring[e] upon [the States’] sovereignty over criminal matters,” ibid.; would undercut the historic limitation of habeas relief to those “ ‘grievously wronged,’ ” ibid.; and would “impos[e] significant ‘social costs,’ ” ibid. (quoting United States v. Mechanik, 475 U. S. 66, 72 (1986)). Since each of these concerns applies with equal force whether or not the state court reaches the Chapman question, it would be illogical to make the standard of review turn upon that contingency.
The opinion in Brecht clearly assumed that the Kotteakos standard would apply in virtually all §2254 cases. It suggested an exception only for the “unusual case” in which “a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, . . . infect[s] the integrity of the proceeding.” 507 U. S., at 638, n. 9. This, of course, has nothing to do with whether the state court conducted harmless-error review. The concurring and dissenting opinions shared the assumption that Kotteakos would almost always be the standard on collateral review. The former stated in categorical terms that the “Kotteakos standard” “will now apply on collateral review” of state convictions, 507 U. S., at 643 (Stevens, J., concurring). Justice White’s dissent complained that under the Court’s opinion Kotteakos would apply even where (as in this case) the state court found that “no violation had occurred,” 507 U. S., at 644; and Justice O’Connor’s dissent stated that Chapman would “no longer appl[y] to any trial error asserted on habeas,” 507 U. S., at 651. Later cases *118 also assumed that Brechfs applicability does not turn on whether the state appellate court recognized the constitutional error and reached the Chapman question. See Penry v. Johnson, 532 U. S. 782, 795 (2001); Calderon v. Coleman, 525 U. S. 141, 145 (1998) (per curiam).
Petitioner’s contrary position misreads (or at least exaggerates the significance of) a lone passage from our Brecht opinion. In that passage, the Court explained:
“State courts are fully qualified to identify constitutional error and evaluate its prejudicial effect on the trial process under Chapman, and state courts often occupy a superior vantage point from which to evaluate the effect of trial error. For these reasons, it scarcely seems logical to require federal habeas courts to engage in the identical approach to harmless-error review that Chapman requires state courts to engage in on direct review.” 507 U. S., at 636 (citation omitted).
But the quoted passage does little to advance petitioner’s position. To say (a) that since state courts are required to evaluate constitutional error under Chapman it makes no sense to establish Chapman as the standard for federal habeas review is not at all to say (b) that whenever a state court fails in its responsibility to apply Chapman the federal habeas standard must change. It would be foolish to equate the two, in view of the other weighty reasons given in Brecht for applying a less onerous standard on collateral review— reasons having nothing to do with whether the state court actually applied Chapman.
Petitioner argues that, if Brecht applies whether or not the state appellate court conducted Chapman review, then Brecht would apply even if a State eliminated appellate review altogether. That is not necessarily so. The federal habeas review rule applied to the class of case in which state appellate review is available does not have to be the same rule applied to the class of case where it is not. We have no *119 occasion to resolve that hypothetical (and highly unrealistic) question now. In the case before us petitioner did obtain appellate review of his constitutional claim; the state court simply found the underlying claim weak and therefore did not measure its prejudicial impact under Chapman. The attempted analogy — between (1) eliminating appellate review altogether and (2) providing appellate review but rejecting a constitutional claim without assessing its prejudicial impact under Chapman — is a false one.
Petitioner contends that, even if Brecht adopted a categorical rule, post-Brecht developments require a different standard of review. Three years after we decided Brecht, Congress passed, and the President signed, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), under which a habeas petition may not be granted unless the state court’s adjudication “resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .” 28 U.S.C. § 2254(d)(1). In Mitchell v. Esparza, 540 U. S. 12 (2003) (per curiam), we held that, when a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under §2254 unless the harmlessness determination itself was unreasonable. Petitioner contends that § 2254(d)(1), as interpreted in Esparza, eliminates the requirement that a petitioner also satisfy Brechts standard. We think not. That conclusion is not suggested by Esparza, which had no reason to decide the point. Nor is it suggested by the text of AEDPA, which sets forth a precondition to the grant of habeas relief (“a writ of habeas corpus ... shall not be granted” unless the conditions of § 2254(d) are met), not an entitlement to it. Given our frequent recognition that AEDPA limited rather than expanded the availability of habeas relief, see, e. g., Williams v. Taylor, 529 U. S. 362, 412 (2000), it is implausible that, without saying so, AEDPA replaced the Brecht standard of “‘actual prejudice,”’ 507 *120 U. S., at 637 (quoting United States v. Lane, 474 U. S. 438, 449 (1986)), with the more liberal AEDPA /Chapman standard which requires only that the state court’s harmless-beyond-a-reasonable-doubt determination be unreasonable. That said, it certainly makes no sense to require formal application of both tests (AEUTA/Chapman and Brecht) when the latter obviously subsumes the former. Accordingly, the Ninth Circuit was correct to apply the Brecht standard of review in assessing the prejudicial impact of federal constitutional error in a state-court criminal trial.[2]
B
Petitioner argues that, even if Brecht provides the standard of review, we must still reverse the judgment below because the exclusion of Maples’ testimony substantially and injuriously affected the jury’s verdict in this case. That argument, however, is not fairly encompassed within the question presented. We granted certiorari to decide a question that has divided the Courts of Appeals — whether Brecht or Chapman provides the appropriate standard of review when constitutional error in a state-court trial is first recognized by a federal court. Compare, e. g., Bains v. Cambra, 204 F. 3d 964, 976-977 (CA9 2000), with Orndorff v. Lockhart, 998 F. 2d 1426, 1429-1430 (CA8 1993). It is true that the second sentence of the question presented asks: “Does it matter which harmless error standard is employed?” Pet. for Cert. I. But to ask whether Brecht makes any real difference is not to ask whether the Ninth Circuit misapplied *121 Brecht in this particular case. Petitioner seems to have understood this. Only in a brief footnote of his petition did he hint that the Ninth Circuit erred in its application of the Brecht standard. Pet. for Cert. 23, n. 19.[3] Indeed, if application of the Brecht standard to the facts of this case were encompassed within the question presented, so too would be the question of whether there was constitutional error in the first place. After all, it would not “matter which harmless error standard is employed” if there were no underlying constitutional error. Unlike the dissenting Justices, some of whom would reverse the decision below on the ground that the error was harmful under Brecht, and one of whom would vacate the decision below on the ground that it is unclear whether there was constitutional error in the first instance, we read the question presented to avoid these tangential and factbound questions, and limit our review to the question whether Chapman or Brecht provides the governing standard.
* * *
We hold that in §2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the “substantial and injurious effect” standard set forth in Brecht, supra, whether or not the state *122 appellate court recognized the error and reviewed it for harmlessness under the “harmless beyond a reasonable doubt” standard set forth in Chapman, 386 U. S. 18. Since the Ninth Circuit correctly applied the Brecht standard rather than the Chapman standard, we affirm the judgment below.

It is so ordered.

 As this case comes to the Court, we assume (without deciding) that the state appellate court’s decision affirming the exclusion of Maples’ testimony was an unreasonable application of Chambers v. Mississippi, 410 U. S. 284, 302 (1973). We also assume that the state appellate court did not determine the harmlessness of the error under the Chapman standard, *117 notwithstanding its ambiguous conclusion that the exclusion of Maples’ testimony resulted in “no possible prejudice.”

 We do not agree with petitioner’s amicus that Brecht’s concerns regarding the finality of state-court criminal judgments and the difficulty of retrying a defendant years after the crime “have been largely alleviated by [AEDPA],” which “sets strict time limitations on habeas petitions and limits second or successive petitions as well.” Brief for Innocence Network 7. Even cases governed by AEDPA can span a decade, as the nearly 12-year gap between petitioner’s conviction and the issuance of this decision illustrates.

 The question presented included one additional issue: “[I]f the Brecht standard applies, does the petitioner or the State bear the burden of persuasion on the question of prejudice?” Pet. for Cert. I. We have previously held that, when a court is “in virtual equipoise as to the harmlessness of the error” under the Brecht standard, the court should “treat the error ... as if it affected the verdict . . . .” O’Neal v. McAninch, 513 U. S. 432, 435 (1995). The majority opinion below did not refer to O’Neal, presumably because the majority harbored no grave doubt as to the harmlessness of the error. Neither did the dissenting judge refer to O’Neal, presumably because she did not think the majority harbored grave doubt as to the harmlessness of the error. Moreover, the State has conceded throughout this §2254 proceeding that it bears the burden of persuasion. Thus, there is no basis on which to conclude that the court below ignored O’Neal.