NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

PAUL WARD, as next friend of Crystal
M., a minor,

                Petitioner - Appellant,

  v.

EUGENIA ORTEGA, Superintendent,

             Respondent - Appellee.

No. 08-56856

D.C. No. 5:02-cv-01022-MMM-FMO

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted February 2, 2010
Pasadena, California

Before: B. FLETCHER, PREGERSON, and GRABER, Circuit Judges.

Paul Ward, as next friend of Crystal M., a minor at the time of her

conviction, appeals the district court's denial of the habeas corpus petition, alleging

that Crystal's confession was obtained in violation of *Miranda v. Arizona*, 384

U.S. 436 (1966). We have jurisdiction under 28 U.S.C. § 2253 and we reverse.

---

     [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

Crystal was convicted in juvenile court of two counts of murder, one count of residential burglary, two counts of robbery, two counts of unlawfully driving or taking a vehicle, and two counts of receiving stolen property. Crystal was a 12-year-old runaway at the time of the crimes. The state stipulated that no physical evidence linked her to the murders or indicated her presence in the house where the robbery and murders took place. Rather, only Crystal's own inculpatory statements, made during a five-hour long interrogation in which she maintained her innocence of the murders, put her at the scene of the murders.

During her interrogation, Crystal admitted to entering the victims' home with 19-year-old Jesse Crespin ("Crespin"), taking toiletries and several items of jewelry, and guarding the female victim. Crystal stated that she left the house because she was scared. At the time she left, both of the victims were alive. The female victim was sitting on the toilet in the bathroom with her hands tied and the male victim was sitting in the kitchen. Crystal stated that she did not see Crespin kill either of the victims, but admitted she thought that he may have killed them.

Crystal moved to have her inculpatory custodial interrogation statements suppressed in the proceedings in juvenile court. After an evidentiary hearing, the court denied the motion in an oral ruling. On appeal, the California Court of Appeal affirmed the juvenile court, ruling that Crystal knowingly and voluntarily

2

waived her Fifth Amendment rights.[1]  The state appellate court held that

"[a]lthough Crystal was undeniably, and tragically, a young girl, nothing in the

record demonstrates she was confused or uncertain about her rights."  The

California Supreme Court denied the appeal without comment.

We review a district court's decision to grant or deny a writ of habeas corpus

de novo and the district court's findings of fact for clear error.  *Richter v. Hickman*,

578 F.3d 944, 951 (9th Cir. 2009) (en banc).  We also assess the prejudicial impact

of any constitutional error by asking whether the error "had substantial and

injurious effect or influence in determining the jury's verdict." *Brecht v.*

*Abrahamson*, 507 U.S. 619, 623 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 121-

22 (2007) (holding that the *Brecht* standard applies whether or not the state court

recognized the error and reviewed it for harmlessness).

To succeed on a petition for habeas corpus after the enactment of the

Antiterrorism and Effective Death Penalty Act (AEDPA), a petitioner must show

that the last reasoned state court decision was (1) "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the

---

[1] The California Court of Appeal also held that Crystal did not invoke her right to remain silent and that her confession was not coerced.  Because we hold that Crystal did not give a knowing and voluntary waiver, we need not reach the California Court of Appeal's alternate holdings.

Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court decision is an 'unreasonable application of' clearly established federal law 'if the state court identifie[d] the correct governing legal rule . . . but unreasonably applie[d] it to the facts' at hand." *Richter*, 578 F.3d at 951 (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000)).

We hold that the state appellate court's decision that Crystal knowingly waived her *Miranda* rights is an unreasonable application of clearly established federal law. Although the state appellate court correctly identified the "totality of the circumstances" test as the proper standard for evaluating whether Crystal's waiver was knowing and voluntary, the court did not reasonably apply that test because it failed to weigh the relevant factors. *See Doody v. Schriro*, 596 F.3d 620, 645 (9th Cir. 2010) (en banc) ("[T]he Arizona Court of Appeals' voluntariness ruling unreasonably applied clearly established federal law because it analyzed the individual circumstances of the interrogation without weighing the totality of the circumstances."); *see also Moran v. Burbine*, 475 U.S. 412, 421-22 (1986); *Taylor v. Maddox*, 366 F.3d 992, 1014-16 (9th Cir. 2004).

The government was required to demonstrate that Crystal waived her *Miranda* rights "with a full awareness of both the nature of the right being

4

abandoned and the consequences of the decision to abandon it." *See Moran*, 475 U.S. at 421; *Miranda*, 384 U.S. at 475 ("[A] heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."). The Supreme Court long has recognized that, in the interrogation of a minor, "the greatest care must be taken to assure that the admission was voluntary." *In re Gault*, 387 U.S. 1, 45, 55 (1967) ("This court has emphasized that admissions and confessions of juveniles require special caution."); *see also Doody*, 596 F.3d at 638-39. Thus, the totality of the circumstances test requires consideration of "the juvenile's age, experience, education, background, and intelligence, and [inquiry] into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).

Here, the court considered Crystal's age and the circumstances of the interrogation, but did not consider her experience, education, background, or intelligence. At the time of the interrogation, Crystal was 12 years old and had completed sixth grade. She had no similar experiences with law enforcement prior to this interrogation and she did not have a parent or other friendly adult present. The detective who had interrogated Crystal testified that Crystal "was not very

5

articulate," and the interrogation transcript reveals that Crystal "forgot" what the word "intimidated" meant.

Most significantly, the state appellate court erroneously concluded that "nothing in the record demonstrates [Crystal] was confused or uncertain about her rights." The record contradicts this conclusion. The detective who interrogated Crystal testified that Crystal was confused about her right to an appointed attorney. Nothing in the record shows how the detective clarified that right. The state appellate court's "unreasonable determination of [this] pivotal fact[]" provides persuasive support for our holding that its decision was unreasonable. *See Doody*, 596 F.3d at 642 (holding that the state appellate court's ruling that the juvenile's confession was voluntary was unreasonable because pivotal factual determinations were not supported by the record); *see also Wiggins v. Smith*, 539 U.S. 510, 528 (2003) (noting that "partial reliance on an erroneous factual finding further highlights the unreasonableness of the state court's decision").

Finally, although Crystal agreed to talk to the detective after hearing the standard recitation of *Miranda* rights, this fact alone does not show that she knowingly waived those rights. *See Murray v. Earle*, 405 F.3d 278, 289 (5th Cir. 2005) (holding that an 11-year-old girl "cannot be held to have knowingly and voluntarily waived her rights to be represented by counsel and to remain silent"

6

because "[o]ther than having [her] sign a *Miranda* card, and briefly explaining her rights to her at the outset of the interrogation, the police took no precautions to ensure the voluntariness of her statement, let alone 'special care'"). The state, therefore, did not meet its "heavy burden" of establishing that Crystal gave a knowing and voluntary waiver. *See Miranda*, 384 U.S. at 475.

Because the appellate court failed to consider the totality of the circumstances and made an erroneous factual determination regarding a pivotal fact, we conclude that Crystal did not knowingly waive her *Miranda* rights. The state appellate court unreasonably applied clearly established federal law by holding otherwise. This error was not harmless because the parties stipulated in the juvenile court proceedings that no physical evidence linked Crystal to the crime scene. Only Crystal's own admissions connected Crystal to the murders. Accordingly, we reverse the district court's denial of the writ of habeas corpus and remand to the district court with instructions to issue a writ of habeas corpus, subject to possible retrial after consideration of Crystal's age and release date.

**REVERSED AND REMANDED.**

Ward v. Ortega, No. 08-56856

GRABER, Circuit Judge, dissenting:

I respectfully dissent.  Under the strict standard of review mandated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), I would affirm the district court's denial of the habeas petition brought on behalf of Crystal M.

In a detailed opinion, the state appellate court determined that, under the totality of the circumstances, Crystal waived her Miranda[1] rights.  That determination was not an "unreasonable application of[] clearly established Federal law," 28 U.S.C. § 2254(d)(1), simply because of Crystal's age and some evidence of initial confusion about one of the rights.  The detective explained Crystal's Miranda rights to her initially in the car on the way to the police station.  Once at the police station and under audio recording, the detective carefully ensured that Crystal understood her rights before she began questioning:

> Q.  [by the detective]:  . . . .
>
> Crystal, when we were in the car on the way here, do you remember me reading you those rights?  Okay.  I'm gonna . . . read them to you again and I'll ask you each time if you understand.
>
> A.  [by Crystal]:  Okay.

---

[1]  Miranda v. Arizona, 384 U.S. 436 (1966).

Q. Okay. You ready?

A. Yeah.

Q. You have the right to remain silent? Okay? Anything you say can be used against you in court. You have the right to an attorney before and during questioning. Okay?

A. Okay.

Q. This is the one we talked about in the car if you cannot afford an attorney, one will be appointed for you by the court free of charge before questioning.

Do you understand the rights I have just explained to you?

A. Yes.

Q. Do you need me to explain that one again?

A. No.

Q. Okay. With these rights in mind, are you willing to talk to me?

A. Yeah.

Q. Okay. Is that yes or know [sic] [no]?

A. Yes.

The fact that the detective already had explained to Crystal her rights further strengthens, rather than undermines, the state court's holding.

The Fifth Circuit's decision in <u>Murray v. Earle</u>, 405 F.3d 278 (5th Cir.

2

2005), is not to the contrary. First, many factual differences distinguish Murray from this case: the child in Murray was younger than Crystal, id. at 288; she "had been held in the custody of the State for three days," id.; she "was found to have below-normal intelligence by the court-appointed psychiatrist," id.; and the police officers "had represented to [the child] that they had already talked to everyone in her family, that everyone 'knew' what happened, and that she could help her family only by telling the truth," id. at 289. Perhaps more importantly, Murray was a civil case filed under § 1983 and decided de novo; the very demanding AEDPA standards simply did not apply.

The majority does not reach the next issue, whether Crystal invoked her right to silence partway through the interview. On that issue, I would hold that the state court's determination that Crystal did not invoke her right to silence was an unreasonable application of clearly established federal law. In context, Crystal's statement that "I just don't want to talk about it [the murders]," was a clear invocation of her right to silence. See Anderson v. Terhune, 516 F.3d 781, 787 (9th Cir. 2008) (en banc) ("As the Supreme Court has observed, in invoking a constitutional right, 'a suspect need not speak with the discrimination of an Oxford don.'" (quoting *Davis v. United States*, 512 U.S. 452, 459 (1994))); Arnold v. Runnels, 421 F.3d 859, 865 (9th Cir. 2005) ("[N]either the Supreme Court nor this

3

court has required that a suspect seeking to invoke his right to silence provide any statement more explicit or more technically-worded than 'I have nothing to say.'"). Although all statements made after Crystal invoked her right to silence should have been suppressed, her earlier statements implicated her in the crimes. The error therefore was harmless. See <u>Arizona v. Fulminante</u>, 499 U.S. 279, 310 (1991) (holding that courts must review for harmless error the failure to suppress a confession).