**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSHUA RICHTER,
　　　　　*Petitioner-Appellant,*

　　　　v.

KELLY HARRINGTON, Warden,
　　　　　*Respondent-Appellee.*

No. 06-15614

D.C. No.
CV-01-00643-JKS

OPINION

On Remand from the United States Supreme Court

Filed July 11, 2011

Before: Alex Kozinski, Chief Judge, Stephen Reinhardt,
Diarmuid F. O'Scannlain, Andrew J. Kleinfeld,
Barry G. Silverman, Kim McLane Wardlaw,
Raymond C. Fisher, Richard A. Paez, Jay S. Bybee,
Milan D. Smith, Jr. and Sandra S. Ikuta, Circuit Judges.

Per Curiam Opinion

## COUNSEL

Cliff Gardner, Oakland, California, for the petitioner-appellant.

Harry Joseph Colombo, Deputy Attorney General, John G. McLean, Supervising Deputy Attorney General, and Mark Anthony Johnson, Deputy Attorney General, Sacramento, California, for the respondent-appellee.

## OPINION

PER CURIAM:

In a previous en banc opinion, we held that Richter's trial counsel provided him constitutionally ineffective assistance because he failed to consult or call forensic experts to explain

a pool of blood found at the crime scene. *See Richter* v. *Hickman*, 578 F.3d 944, 968 (9th Cir. 2009) (en banc). The Supreme Court reversed, holding that the state court reasonably denied the claim in a decision entitled to AEDPA deference. *See Harrington* v. *Richter*, 131 S. Ct. 770, 780-81, 788, 791 (2011). The Court didn't reach Richter's remaining claims, but they meet the same fate.

"Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of this Court, [28 U.S.C.] § 2254(d)(1); or that it 'involved an unreasonable application of' such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." *Id.* at 785 (internal citation omitted).

**[1]** First, Richter argues that his lawyer should have had an expert testify that the surviving victim (Johnson) was using a .380 caliber Mac-12 handgun whose modifications made it prone to jamming. Specifically, he contends that the state court's rejection of this ineffective assistance of counsel argument was an "unreasonable application" of *Strickland* v. *Washington*, 466 U.S. 668, 690 (1984). The defense's theory at trial was that Johnson tried to shoot Richter's confederate, Branscombe, but the gun jammed when an empty shell failed to eject. Johnson then allegedly picked up a .22 caliber handgun and accidentally shot the victim, Klein, who eventually died. As the three-judge panel explained, introducing additional evidence on this point was unlikely to make a difference:

> Even had the jury heard the proffered expert's testimony that the Mac-12 *could* jam, there is no reasonable probability that the jury would have accepted appellants' theory that the Mac-12 *did* jam in this case. The proffered expert offers no opinion on the

actual likelihood that such a modification would cause the weapon to jam. Garbutt, the State's own expert, admitted at trial that the modifications to Johnson's Mac-12 *could* possibly cause it to fail to fire, but found that the weapon successfully fired each of the three times that he tested it. . . . The totality of the evidence presented at trial weighs strongly against appellants' theory that the Mac-12 jammed and that Branscombe fired at Klein in self-defense. There is no reasonable probability that the jury would have changed its verdict had they heard additional testimony stating that the Mac-12 could possibly malfunction in some manner.

*Richter* v. *Hickman*, 521 F.3d 1222, 1230-31 (9th Cir. 2008). Because the state court could reasonably have come to the same conclusion, its rejection of Richter's argument was not an unreasonable application of *Strickland*.

**[2]** Second, Richter argues that his lawyer should have called lay witnesses to testify that Johnson's gun safe was already at his house before the shootings. This would weaken the theory that Richter and Branscombe entered Johnson's house in order to steal the safe, and were therefore guilty of felony murder. But counsel *did* call a witness who testified she had seen the safe in Richter's house just a few days before the shootings. Counsel later recalled that he thought the cross-examination of the other potential witnesses would hurt their credibility and end up doing more harm than good. The state court could reasonably have concluded that counsel made a legitimate tactical decision, that the decision (if wrong) caused no prejudice and, thus, that the state court's decision was not an unreasonable application of *Strickland*. *See Strickland*, 466 U.S. at 690; *cf. Richter*, 131 S. Ct. at 792.

**[3]** Third, Richter claims the trial court violated his Eighth and Fourteenth Amendment rights by giving an inaccurate

answer to the following request for clarification submitted by
the jury:

> If a defendant is found guilty of Robbery & Burglary
> in the first degree, it is our understanding that this
> necessarily leads to a guilty verdict of murder in the
> first degree if a human being is killed during the
> commission of the above Robbery and Burglary.
> . . . [I]f a defendant is found to have aided & abetted
> in the above Robbery/Burglary, is he guilty of all
> charges . . . as found for the other defendant.

The trial court answered "yes." As the three-judge panel
explained, this created a potential problem for Richter:

> The trial court's response to the jury's request for
> clarification could be interpreted as an inaccurate
> statement of California law. . . . The most natural
> reading of the colloquy is that it correctly states Cali-
> fornia's felony murder rule: when a defendant aids
> and abets a robbery, and someone is killed during the
> robbery, the defendant is guilty of both robbery and
> murder, even if his accomplice does the killing. But
> the colloquy goes further. It permits the jury to con-
> clude that a defendant who aids and abets a robbery-
> murder must be found guilty of robbery and murder
> even if he does not begin to aid or abet the robbery
> until after the murder has already occurred. This
> interpretation of the colloquy [would be] an incorrect
> statement of California law.

*Richter*, 521 F.3d at 1237 (citation omitted). The panel found
that there was very little chance the jury interpreted the collo-
quy incorrectly—and that any error would have been harm-
less:

> In phrasing the request for clarification the way they
> did, it is unlikely that the jury was attempting to

determine whether someone who began to aid and abet a robbery only after a murder had been committed must be found guilty of the murder. . . . Even if the trial court did commit constitutional error, the error was harmless. For the error to have an injurious effect or influence in determining the jury's verdict, the jury must have believed . . . that (1) Richter had no intention of robbing Johnson (or of helping Branscombe rob Johnson) when he and Branscombe drove to Johnson's house around 4:00 that morning, (2) Branscombe, unbeknownst to Richter, decided to rob Johnson and shoot Klein, (3) after Klein was shot, Richter decided to aid and abet Branscombe in committing the robbery. Neither the State nor the defendants argued such a theory of the case. Such a conclusion would go against significant evidence presented at trial, including the evidence showing that Richter owned the same type of bullets used to shoot Klein. This conclusion would also be inconsistent with the testimony of *both* Richter and Johnson. It is unlikely that any member of the jury arrived at this conclusion.

*Id.* at 1237-38. We agree. *See Fry* v. *Pliler*, 551 U.S. 112, 121-22 (2007) (holding that in federal habeas proceedings, the court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht* v. *Abrahamson*, 507 U.S. 619, 623 (1993), regardless of whether the state appellate court recognized the error and reviewed it for harmlessness).

Fourth, Richter argues that the government withheld exculpatory evidence in violation of *Brady* v. *Maryland*, 373 U.S. 83 (1963), and the state court's rejection of this claim was an unreasonable application of *Brady*. During the trial, a state investigator named Maloney went back to the crime scene and examined a previously overlooked bullet hole in a floorboard. He concluded that it was made by a .22 caliber bullet, which

was consistent with Johnson's testimony that he never fired his .380 at Branscombe and had made the hole while cleaning his own .22. Maloney tried to find the bullet itself by cutting away a piece of the floorboard with the hole in it. But he dropped the piece into the crawl space under the house and testified that it couldn't be retrieved unless someone cut a larger hole in the floor or removed "a good section of the side of the house." In fact, after the trial, Richter's father easily retrieved the floorboard by accessing the crawl space through an opening behind the house. A different investigator then looked at the hole and concluded that it was probably caused by a .380 caliber bullet.

**[4]** The state court could reasonably have concluded that producing the actual floorboard during the middle of trial wouldn't have "put the whole case in such a different light as to undermine confidence in the verdict." *See Kyles* v. *Whitley*, 514 U.S. 419, 435 (1995). Before dropping the piece of wood into the crawl space, the state investigator placed a measuring device next to the bullet hole and took photographs that were turned over to the defense and made available to the jury. Richter doesn't argue that the photos were distorted or inaccurate in any way.

**[5]** Finally, Richter argues that his lawyer should have further investigated the hole and introduced evidence that it was actually made by a .380 caliber weapon. But pursuing that line may understandably have seemed like a waste of time. *See Rompilla* v. *Beard*, 545 U.S. 374, 383 (2005). Johnson admitted making the hole with a .22 caliber gun, though he claimed it was on a different occasion, and the government's investigator confirmed the size of the hole. The state court could reasonably have concluded that counsel made a strategic decision to accept and use that evidence to support the defense's theory of the case, and that the decision was reasonable at the time. *Strickland*, 466 U.S. at 689-90. Someone shot Klein in the back with a .22, and Richter had to convince the jury it wasn't him. It helped to point out that Johnson admit-

ted shooting a .22 into the floor at some point: Counsel argued to the jury that *Johnson* was the one firing a .22 on the night of the murder, and that he actually shot the floor around the same time he shot Klein.

**AFFIRMED.**