**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DAVID A. RADEMAKER,
*Petitioner-Appellant*,

v.

DANIEL PARAMO, Warden,
*Respondent-Appellee.*

No. 14-56946

D.C. No.
2:08-cv-08486-VAP-CW

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Submitted March 10, 2016[*]
Pasadena, California

Filed August 30, 2016

Before: Richard R. Clifton, Consuelo M. Callahan,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Callahan

---

[*] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the district court's denial of David Rademaker's habeas corpus petition challenging his California state conviction for first-degree murder with a special circumstance for committing the murder during the commission of a kidnapping.

The jury found the special circumstance based on an erroneous jury instruction regarding the element of asportation. The panel held that the California Court of Appeal's determination that the instructional error was harmless beyond a reasonable doubt was not an objectively unreasonable application of *Chapman v. California*, 386 U.S. 18 (1967).

## COUNSEL

Tracy J. Dressner, La Crescenta, California, for Petitioner-Appellant.

Allison H. Chung, Deputy Attorney General; Stephanie C. Brenan, Supervising Deputy Attorney General; Lance E. Winters, Senior Assistant Attorney General; Gerald A. Engler, Chief Assistant Attorney General; Kamala D. Harris, Attorney General; Office of the Attorney General, Los Angeles, California, for Respondent-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

CALLAHAN, Circuit Judge:

Kimberly Pandelios disappeared on February 27, 1992. In March 1993, hikers discovered some of her remains in the Angeles National Forest but her disappearance remained a mystery until 2004, when evidence surfaced linking David Rademaker to her death. At Rademaker's trial, the evidence established that Rademaker lured Pandelios to a secluded location on the Angeles Crest Highway for a photo shoot, then abducted and drowned her in a nearby creek. A jury convicted Rademaker of first-degree murder. Based on an erroneous jury instruction regarding the element of asportation, the jury also found true the special circumstance that Rademaker committed the murder during the commission of a kidnapping. The California Court of Appeal affirmed the conviction on direct appeal. *People v. Rademaker*, No. B190134, 2007 WL 1982272 (Cal. Ct. App. July 10, 2007), *modified on denial of reh'g* (July 27, 2007). Applying *Chapman v. California*, 386 U.S. 18, 24 (1967), the court found the instructional error "harmless beyond a reasonable doubt" under state law. On habeas review and subject to the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(d), we must decide whether the state court's harmless-error determination was objectively unreasonable. We hold that it was not.

I.  Background

A.

Pandelios, an aspiring model, was 21 years old when she answered a modeling recruitment advertisement placed by

someone purporting to be a magazine photographer. The photographer turned out to be Rademaker, who was 28 years old, and the photo shoot a ruse to demand sex.[1] Pandelios agreed to meet Rademaker on February 27, 1992. That day, she was seen wearing a blue suit, white blouse, and high heels.

About 1 p.m., Pandelios drove her car to meet Rademaker at a location on the Angeles Crest Highway, near the Angeles National Forest. When the two met, Rademaker made a sexual overture, which Pandelios rebuffed. After overpowering and anally penetrating her, he pushed her head into a creek and drowned her.

Later that evening, a Los Angeles deputy sheriff spotted Pandelios's car parked on the shoulder of the Angeles Crest Highway, just north of the Monte Cristo campground. The car appeared to be vacant and in good condition. Some time later, Rademaker returned to the car with C.H., a 14-year-old girl with whom he had developed a sexual relationship. Unaware of the murder, C.H. watched as Rademaker squirted charcoal lighter fluid inside the car and lit it on fire. The blaze eventually caught the attention of a second deputy sheriff, who noticed that the fire emanated from the front passenger side rather than from the engine compartment, indicating an intent to destroy evidence or to commit suicide.

---

[1] According to testimony from Richard Albertini, whom Rademaker befriended in the mid-1980s, Rademaker was involved in a prostitution outcall business. He would place advertisements in *LA Express* with pictures of nearly nude girls along with a phone number. After a potential customer left a message at the phone number in the ad, Rademaker would vet the customer and then return the call using a router so his phone call could not be traced. Rademaker would then arrange a meeting between the prostitute and the customer.

In the days that followed, police recovered an empty charcoal lighter fluid container, a plastic lighter and a handcuff key—all observed in the vicinity of Pandelios's car. A month later, hikers found Pandelios's appointment book at the bottom of a bridge, next to a nearby creek.

It took a year for anyone to discover Pandelios's remains, however. In March 1993, hikers discovered her skull and pelvic bone in an isolated, wooded area near the Monte Cristo campground. The area, known as the "cement slab," included a creek or stream bed. A bra similar to Pandelios's was found in the vicinity of the skull, as well as pantyhose. Both bra straps had been severed by a sharp object like a knife, razor or scissors, enabling the bra to be removed if the victim's hands were bound or handcuffed. The pantyhose had also been severed by a sharp object.

In March 1993, a forensic anthropologic recovery team investigated the location where the skull had been recovered and found Pandelios's fractured mandible[2] as well as a pair of handcuffs, hair, fabric, and Pandelios's ring and earrings. Two years later, a leg bone was found in the creek near the "cement slab."

Pandelios's case went cold. In January 2004, just after Rademaker was released from prison for unrelated crimes, the cold case unit coincidentally began looking into Pandelios's disappearance. Police learned that during the course of a sexual relationship with M.K., another 14-year-old girl,

---

[2] According to the stipulated findings of a dental expert, blows from a small, hard round object could have caused the fracturing of the front part of the jaw and the fracturing and chipping of several teeth. The expert also found that these injuries likely occurred around the time of death.

Rademaker drove M.K. to the Angeles Forest and confessed to sodomizing and murdering "a blonde model that he met through a personal ad."**[3]** Rademaker told M.K. that the murder was featured on *Unsolved Mysteries* but that the show got it wrong because it reported that the suspects were tattooed bikers.

Police also contacted C.H., whose name appeared in Pandelios's case file and was described as a girlfriend of Rademaker at the time Pandelios disappeared. C.H. cooperated with law enforcement to elicit a confession from Rademaker. During recorded conversations, Rademaker admitted that he had set fire to the car while C.H. was present. Police arrested Rademaker during the course of this surveillance.

## B.

Rademaker was indicted for Pandelios's murder. The prosecution alleged that the murder took place during the commission of a kidnapping, a special circumstance charged under California Penal Code § 190.2(a)(17)(B) and requiring proof of asportation—i.e., the "carrying away of the victim." *Laurel v. Superior Court of Los Angeles Cty.*, 255 Cal. App. 2d 292, 298 (1967); *see* Cal. Penal Code § 207(a) ("Every person who forcibly . . . steals or takes, or holds, detains, or arrests any person in this state, and carries the person . . . into another part of the same county, is guilty of kidnapping."). At the time, California Jury Instruction–Criminal No. 9.50

---

**[3]** Although it was alleged that the murder was committed while Rademaker engaged in unlawful sodomy, the jury found this special circumstance not true. *Rademaker*, 2007 WL 1982272, at *1 n.2; *see* Cal. Penal Code § 190.2(a)(17)(D).

defined asportation as the movement of a victim "for a substantial distance, that is, a distance more than slight or trivial." *Rademaker*, 2007 WL 1982272, at \*5 (quoting CALJIC 9.50 (6th ed. 1996)). The definition was based on state supreme court precedent. *People v. Caudillo*, 21 Cal. 3d 562, 572 (1978) (citing *People v. Stanworth*, 11 Cal. 3d 588, 601 (1974)).

The California Supreme Court enlarged the definition of asportation in 1999, overruling *Caudillo*. *People v. Martinez*, 20 Cal. 4th 225, 237–38 & n.6 (1999). In *Martinez*, the court adopted a totality of the circumstances standard, holding that factors other than actual distance may be relevant to asportation. *Id.* California Jury Instruction–Criminal No. 9.50 was thus revised to conform to *Martinez.* The new version stated in pertinent part:

> A movement that is only for a slight or trivial distance is not substantial in character. In determining whether a distance that is more than slight or trivial is substantial in character, you should consider the totality of the circumstances attending the movement, including but not limited to, the actual distance moved, or whether the movement increased the risk of harm above that which existed prior to the movement, or decreased the likelihood of detection, or increased both the danger inherent in a victim's foreseeable attempt to escape and the attacker's enhanced opportunity to commit additional crimes.

CALJIC No. 9.50 (1999 rev.). The comment to the revision admonished: "This 1999 revision cannot be applied

retroactively." *Id.* (citing *Martinez*); *see Martinez*, 20 Cal. 4th at 240–41.

At the close of evidence, the trial judge sua sponte charged the jury using the revised instruction even though the instruction was not in effect at the time of the murder. In 2006, a jury found Rademaker guilty of murder. Cal. Penal Code § 187(a). As to the special circumstance, the jury applied the court's instruction and found that the evidence proved kidnapping beyond a reasonable doubt. The trial court sentenced Rademaker to life without the possibility of parole based on this finding.

Rademaker appealed, principally contending that he was prejudiced by the trial judge's use of the 1999 instruction. The California Court of Appeal unanimously affirmed his conviction in a reasoned (unpublished) decision. *Rademaker*, 2007 WL 1982272. The court held that the trial court's instruction was erroneous as a matter of state law, then applied the Supreme Court's harmless-error rule established in *Chapman*. *Id.* at *4–8 & n.6. The court determined:

> Although the precise spot of her murder was not pinpointed, it was reasonable for the jury to infer that [Rademaker]'s intent was to kill Pandelios far from prying eyes and that having selected the spot that suited his nefarious purpose, [Rademaker] did not intend to drag the body for any great distance. Accordingly, the jury was entitled to find [Rademaker] murdered Pandelios at some

> spot not far from the cement slab, which was
> at least a mile from where [he] abducted her.

*Id.* at *8.

Rademaker appealed the decision to the California Supreme Court, but the court denied review of his claims on October 17, 2007. On habeas review, the district court denied relief under AEDPA. This timely appeal followed.

## II. Standard of Review

Rademaker filed his petition for habeas corpus after April 24, 1996, therefore AEDPA applies to his claim of instructional error. *Mann v. Ryan*, — F.3d —, 2016 WL 3854234, at *6 (9th Cir. 2016) (en banc). Where a claim is adjudicated on the merits in state court, we review that claim to determine whether its adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Davis v. Ayala*, 135 S. Ct. 2187, 2198 (2015). "We review the last reasoned state court decision according to this deferential standard." *Mann*, 2016 WL 3854234, at *6. We review de novo the district court's application of AEDPA to that decision. *Id.*

Under AEDPA's "contrary to" clause, we examine whether "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."

*Mann*, 2016 WL 3854234, at \*7 (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). Under the "unreasonable application" clause, "[we] must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then [we] must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The inquiry requires us to determine whether a petitioner has shown that the state court applied a clearly established Supreme Court holding "in an 'objectively unreasonable' manner"—i.e., "the state court's decision to reject his claim 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Ayala*, 135 S. Ct. at 2198–99 (quoting *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003) (per curiam); *Richter*, 562 U.S. at 103).

## III. Analysis

There is no dispute that the trial court erred in using the expanded, non-retroactive asportation instruction. The error, Rademaker contends, violated his federal constitutional rights. We need not resolve that contention. Because the California Court of Appeal applied *Chapman*, we may assume that it found the trial court's error to be a federal constitutional error. *See Martinez*, 20 Cal. 4th at 238–41(holding that retroactive application of the revised kidnapping instruction was barred by the federal Due Process Clause); *see also Ayala*, 135 S. Ct. at 2195, 2197 (making a similar assumption when the state court applied *Chapman* without deciding whether an error violated the federal Constitution). Thus, the only question raised by this appeal

is whether the California Court of Appeal reasonably concluded that the error was "harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24.

"When a *Chapman* decision is reviewed under AEDPA, 'a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable.'" *Ayala*, 135 S. Ct. at 2199 (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007)). As the California Court of Appeal found, the trial court's use of the expanded definition of asportation was an error of state law. Assuming that the error is also a federal constitutional error, however, the error did not prejudice Rademaker since the jury would have properly convicted him of kidnapping—under either definition of asportation—if it found the victim was moved a "substantial distance" of at least 200 feet. *Rademaker*, 2007 WL 1982272, at *7. Critically, the circumstantial evidence cited by the court showed that Rademaker moved Pandelios roughly one to one and one-half miles. *Id.* at *7–8.[4] The evidence included testimony about Rademaker's regular visits to the Angeles National Forest in his SUV; the timing and location of Pandelios's disappearance, which occurred on the very day she was scheduled to meet Rademaker for a photo shoot in the vicinity of the forest; and the discovery of Pandelios's car parked about a mile or a mile and a half from the handcuffs, Pandelios's remains and her personal effects. *Id.* In light of this evidence, it was not objectively unreasonable for the state appellate court to conclude that the

---

[4] The California Court of Appeal observed that "[Rademaker] did not challenge the evidence of the distances involved, nor did he contest that the actual distance the victim was moved was substantial in character." *Id.* at *5. At trial, however, Rademaker contested that Pandelios was moved against her will.

evidence supported the jury's finding that Rademaker carried Pandelios a "substantial distance." The conclusion gave effect to the proper instruction, thus rendering the charging error harmless beyond a reasonable doubt. Because "a fairminded jurist could agree" with the state court's *Chapman* determination, Rademaker "necessarily cannot satisfy" the requirement under *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), of showing that he was "actually prejudiced" by the trial court's error. *Ayala*, 135 S. Ct. at 2199.

## IV. Conclusion

The state court's harmless-error determination was not an objectively unreasonable application of *Chapman*. We therefore **AFFIRM** the district court's denial of habeas relief.