[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13252

Non-Argument Calendar

_____

ROGELIO CASTILLO DEJESUS,
a.k.a. Rogelio Castillo,

                                        Petitioner-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

                                        Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 6:19-cv-00940-GKS-EJK

—————————————————

Before JILL PRYOR, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

Rogelio Castillo DeJesus ("Castillo"), a Florida prisoner serving a 40-year sentence for murder, appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus.  On appeal, Castillo argues that the state court violated clearly established federal law by not suppressing his inculpatory statements under *Miranda v. Arizona*, 384 U.S. 436 (1966).  For the following reasons, we affirm.

## I.

In May 2019, Castillo filed a *pro se* petition for habeas relief under 28 U.S.C. § 2254 in the district court.  In his petition, he stated that, in 2013, he was sentenced to 40 years' imprisonment in Florida state court for second degree murder. As relevant here, Castillo asserted that his conviction was based on inculpatory statements made to the police following incomplete *Miranda* warnings, in violation of the Fifth, Sixth, and Fourteenth Amendments, and that he had not knowingly and intelligently waived his *Miranda* rights.

In response, the State argued that Castillo's claim was unexhausted and should be dismissed because Castillo had only exhausted the claim that his counsel was ineffective as it related to the *Miranda* claim, but not the *Miranda* claim itself.  The State argued that his claim could only have been exhausted on direct

appeal, as it was not cognizable in the postconviction context under Florida law. The State argued that Castillo had not exhausted the claim on direct appeal, as his counsel had not raised the issue at trial and had only raised it for the first time in his direct appeal, and that Castillo had no excuse for the failure to exhaust nor shown a fundamental miscarriage of justice.

The State filed an appendix containing documents from Castillo's state court proceedings. A 2012 information had charged Castillo with second-degree murder with a firearm for the shooting of George Torres.

Castillo moved to suppress statements that he had made to the police following the shooting. In this motion, Castillo argued the following. As a native of Mexico, he had limited knowledge of the English language, and a Spanish-speaking deputy had recited the constitutional rights warning under *Miranda* to him in Spanish. The deputy asked Castillo if he understood, and Castillo replied, "Yes, kind of," in Spanish. The deputies then elaborated further on the rights described in the *Miranda* warning. But Castillo claimed that he did not "truly understand he had the right to refuse to answer the questions posed by the investigators," such that he could not validly waive his rights, and that his incriminating statements taking responsibility for the shooting after being confronted with alleged evidence of his guilt should be suppressed. He further claimed that psychologists stated he would not have had the mental capacity to knowingly waive his *Miranda* rights and that the State was obligated to provide an impartial interpreter.

The state court held a hearing on the suppression motion. One psychologist testified that Castillo had limited education and exposure to the U.S. legal system, but that his verbal level "seemed to be adequate" and did not believe his IQ was below 65. Another psychologist testified that Castillo's testing scores made him believe that he may not have the capacity to knowingly and intelligently waive his *Miranda* rights, given the circumstances of the interrogation and the language and comprehension barriers. The Spanish-speaking deputy who gave Castillo his *Miranda* warning also testified, stating that: (1) Castillo, with his girlfriend, agreed to come with the officers without being handcuffed or arrested; (2) Castillo was not restrained and could have left at any time; (3) the deputy translated when the officers spoke to Castillo; (4) Castillo seemed to understand the questions because he did not ask for many of them to be repeated; (5) Castillo initially admitted he had shot the gun before changing his story; and (6) after the deputy told him he should tell the truth and being confronted with some evidence, Castillo recanted and admitted that he shot Torres.

The State also submitted a certified translation of the interview with Castillo, which included the *Miranda* warning given to Castillo in Spanish. The deputy asked Castillo if he understood his rights, and he replied, "si, más o menos," translated to "yes, kind of." The deputy also told Castillo that he would be asked questions but that he did not have to answer them and could stop at any time. Castillo confirmed he understood. The police then proceeded to interview Castillo about the events of the night Torres was killed. Initially, Castillo admitted that he had fired the gun during the

incident, but then claimed that it was his brother, and not Castillo himself, who had fired the shots. After the deputy repeatedly told Castillo to tell the truth and mentioned that they had witnesses who said he shot Torres, Castillo admitted to firing shots at Torres.

Following the suppression hearing, the state court denied Castillo's motion to suppress. The state court first found that Castillo had not been voluntarily interviewed, meaning that the interview was a custodial interrogation requiring *Miranda* warnings. Next, after reviewing the hearing evidence, the court found that Castillo had understood the rights read to him and had not hesitated after his initial, "yes, sort of." The court found that, although he had low intellectual functioning, he could waive his constitutional rights, as he did not seem intimidated by–nor was coerced by—the officers including the Spanish-speaking deputy.

The case proceeded to trial. Jesus Corona-Perez testified that he lived with Castillo, who kept two guns in the house. On the day of the incident, Torres arrived and began arguing with and hitting Castillo's brother. Corona-Perez unsuccessfully attempted to stop the fight and then heard Castillo fire two shots in the air. He saw Castillo and his brother struggle over the gun and then fired a shot toward Torres, who attempted to run away but fell to the ground. Enrique Navarrete testified that he lived with Castillo, who had two guns, and corroborated Corona-Perez's testimony about the fight. After the shots, Castillo and his brother fled in separate directions, and Navarrete heard another shot as Castillo ran away.

Miles Keene testified that, on the night in question, Castillo came to his house and asked for a ride to Crescent City, which Keene gave to Castillo. Keene called the police after he learned about the shooting and informed them of the ride he gave Castillo.

Charles Badger, an employee of the Florida Department of Law Enforcement's forensic biology section, testified that he performed DNA analysis on the gun in question and had discovered a DNA mixture of more than one person. The "major contributor" DNA profile found on the gun, however, matched Castillo's DNA profile.

Kie Lemelle, who was romantically involved with Castillo, testified that, on the night of the shooting, Castillo was at her mother's house in Crescent City and was crying and upset. Castillo told Lemelle that there was fight between his brother and Torres, that he had fired the gun two or three times at the ground to try and break up the fight, that he had fired a shot at Torres's leg (although he did not know if it had hit him), and that he had put the gun near his boss's home. The two then went to Lemelle's cousin's house, where the police arrived and Castillo and Lemelle agreed to go with the police. Lemelle stated that they were not placed under arrest, and she knew that Castillo owned a gun, which she recognized when the gun was shown in court. On cross-examination, Lemelle acknowledged the language barrier she had with Castillo and admitted she had trouble understanding him the night of the shooting.

Over Castillo's *Miranda* objection, an audio and video recording of his interview was played to the jury, which was also given the certified translated transcript for use during the demonstration. Then, Dr. Timothy Gallagher testified as to his autopsy on Torres.

In his defense, Castillo called Adan Santana Solano as a witness, who left the property when the fight started and did not see a firearm nor hear Castillo being told to get one. Castillo also testified in his own defense. Castillo claimed that he had only fired a warning shot and that his brother took the gun from him and began shooting, after which Castillo saw Torres fall in the road. Castillo also testified that the gun had accidentally discharged towards the road and that he took the gun to keep it from his brother.

After the defense rested, the jury was instructed and found Castillo guilty of second-degree murder using a firearm. Castillo was sentenced to 40 years' imprisonment. Castillo appealed his conviction and sentence to the Florida Fifth District Court of Appeal, which affirmed without a written opinion. Castillo's motion for rehearing and petition for a new appeal based on ineffective assistance of counsel were both denied.

Castillo subsequently moved for postconviction relief on a variety of grounds, including that his counsel was unconstitutionally ineffective in moving for suppression of his statements. The state postconviction court denied this motion, and the state appellate court affirmed the denial.

Returning to the § 2254 proceeding before us, the district court denied Castillo's habeas petition.  The district court found that fair-minded jurists could disagree regarding the correctness of the state court's decision that Castillo had voluntarily, knowingly, and intelligently waived his *Miranda* rights.  The district court noted that Castillo had been advised of his *Miranda* rights in Spanish and, after expressing some confusion, had been informed that he did not have to answer questions and could stop at any time. The district court also found that Castillo had never expressed any confusion or communication issues and, thus, denied the petition on this ground.

Alternatively, the district court found that, even if the admission of his statements was error, it was harmless.  The district court noted that there was other significant evidence of Castillo's guilt, including: his girlfriend's testimony that he had fired shots toward the victim's legs; his roommate's testimony that Castillo had fired his gun while the victim fought with Castillo's brother; Castillo's DNA being the "major contributor" found on the gun; and Castillo fleeing the scene of the shooting.  The district court also noted that, if Castillo wanted to testify that his brother had shot the victim, his statements would have been admissible to impeach him.

The district court denied Castillo a certificate of appealability ("COA").  Castillo timely appealed and filed a motion for a COA with this Court, which was granted as to the following issue: "Whether the state court's denial of DeJesus's motion to suppress

statements made to the police was an unreasonable application of clearly established federal law?"

## II.

We review *de novo* the district court's denial of a § 2254 petition, but with high deference to the state court's decision. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). In reviewing the district court's denial of a § 2254 petition, we "review questions of law and mixed questions of law and fact de novo, and findings of fact for clear error." *Id.* (quoting *Nyland v. Moore*, 216 F.3d 1264, 1266 (11th Cir. 2000)).

## III.

On appeal, Castillo argues that the state trial court incorrectly overlooked whether his statement was made with a full awareness of the nature of his *Miranda* rights and the consequences of abandoning them. He contends that the evidence does not show that he was aware of the consequences of his actions, due to his low mental functioning, his lack of understanding of the U.S. court system, and lack of a fully translated explanation of his rights.

A claim in a § 2254 petition that was adjudicated on the merits in state court proceedings cannot be granted unless the state court's adjudication of the claim (1) unreasonably applied clearly established federal law; or (2) unreasonably determined the facts given the evidence presented. 28 U.S.C. § 2254(d). A state court's rejection of a claim precludes federal relief unless no fairminded jurist could find the state decision consistent with Supreme Court precedent. *Harrington v. Richter*, 562 U.S. 86, 101–02 (2011).

Further, even if the petitioner establishes that the state court unreasonably applied clearly established federal law, we must still consider whether that error was harmless. *Fry v. Pliler*, 551 U.S. 112, 116 (2007); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht*, 507 U.S. at 637. In other words, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fry*, 551 U.S. at 116 (quoting *Brecht*, 507 U.S. at 631). In examining harmlessness, we examine the state court's ruling "in light of the record as a whole." *Brecht*, 507 U.S. at 638.

In *Miranda*, the Supreme Court held that police must fully inform a defendant in custodial interrogation that they intend to use his statements to secure a conviction, and of his rights to remain silent and have counsel present. 384 U.S. at 468–70. *Miranda* rights may be waived, but only if "the waiver is made voluntarily, knowing, and intelligent." *Id.* at 475. This requires "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

A habeas petitioner abandons an issue by failing to address it on appeal. *Freeman v. Comm'r, Ala. Dep't of Corr.*, 46 F.4th 1193, 1220 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 1785 (2023); *see, e.g.*, *Atkins v. Singletary*, 965 F.2d 952, 955 n.1 (11th Cir. 1992). When a district court decision is based on multiple independent grounds, an appellant must argue in his opening brief that each ground was incorrect, or the judgment is affirmed. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

As an initial matter, we conclude that Castillo has waived the issue of any *Miranda* violation being harmless. The district court denied his petition on the alternate grounds that (1) there was no clearly established *Miranda* violation and (2) any alleged error was harmless, given the other evidence of Castillo's guilt presented to the jury. *See Fry*, 551 U.S. at 116; *Brecht*, 507 U.S. at 637–38. Because Castillo's opening brief does not address the harmless error ground, we conclude that he has abandoned the issue, and we may affirm on that independent basis alone. *See Sapuppo*, 739 F.3d at 680.

However, even considering the merits, we conclude that the state court did not unreasonably apply clearly established federal law in finding that there was no *Miranda* violation. Castillo was informed in Spanish that he had the right to remain silent, his statements could be used against him, he had the right to an attorney, and he could stop talking at any time. After he indicated that he did not fully understand, it was reexplained to him that he had right to not answer questions and to stop at any time, and he said that

he understood. While there is some evidence showing that Castillo speaks poor English and his mental capabilities are limited, the record also shows that he lived independently in the United States. A fair-minded jurist could find that, given his background and the explanations provided to him, Castillo had the capability to intelligently waive his *Miranda* rights, and that he knowingly and voluntarily did so. *See Harrington*, 562 U.S. at 101–02. Under our deferential habeas review to the state court, which had the benefit of viewing the recording of the interview and assessing Castillo's capabilities in person, Castillo cannot show that the state court's decision was an unreasonable application of clearly established federal law.

But even if Castillo could show to the contrary, any error would be harmless, given the breadth of other evidence about Castillo's guilt recounted by the district court, e.g., his girlfriend's testimony that Castillo had fired shots toward the victim's legs; his roommate's testimony that Castillo had fired his gun while the victim fought with Castillo's brother; Castillo's DNA being the "major contributor" found on the gun; Castillo fleeing the scene of the shooting; and the fact that, if Castillo wanted to testify that his brother had shot the victim, his statements would have been admissible to impeach him. *See Carlisi v. State*, 831 So. 2d 813, 814–15 (Fla. Dist. Ct. App. 2002) ("Although a defendant's statement that is suppressed as a result of Miranda violations is unavailable to the state during its case-in-chief, the statement may be admissible as a prior inconsistent statement and used by the state for impeachment purposes." (citing *Harris v. New York*, 401 US. 222, 224–26 (1971))).

We thus conclude that Castillo has failed to show "actual preju-dice," as required by *Brecht*, and his claim was properly denied.[1]

## IV.

For the reasons stated, we affirm the denial of Castillo's ha-beas petition.

**AFFIRMED.**

---

[1] Because we deny the claim on the merits, we need not address the state's argument that Castillo's claim is unexhausted. *See* 28 U.S.C. § 2254(b)(2).