GEESTEN, C.J.
Maiker Vazquez (“the defendant”) appeals from his conviction and sentence for second degree murder and attempted kidnapping. We affirm.
As the trial testimony reveals, the defendant agreed to find a buyer for a large amount of Ecstasy pills that an acquaintance wanted to sell. Louis Vasquez (“Vasquez”) introduced the defendant to a buyer who took the pills without paying for them. Therefore, the defendant, his co-defendant, and the co-defendant’s girlfriend, Jackie Gonzalez, began looking for Vasquez to find the buyer.
In preparing to look for Vasquez, the co-defendant and Jackie traded in Jackie’s rental car for a van. Further, they removed the van’s tag and put it in the window. Additionally, the co-defendant carried a gun and put duct tape and a hammer in the van.
Thereafter, the defendant, the co-defendant, and Jackie began driving around all the while searching for Vasquez. Jackie and the defendant alternated driving, while the co-defendant sat in the back seat.
The threesome spotted Vasquez coming out of a gym. The co-defendant got out of the van, confronted Vasquez, and the two men wrestled. During the fight, the co-defendant shot Vasquez, and unsuccessfully tried to push Vasquez into the back of the van. At this point, the defendant drove off, picking up his co-defendant along the way.
The police later stopped the van, and the co-defendant and Jackie submitted to arrest. The defendant ran, but was finally arrested when he attempted to jump over a fence. Although all three were arrested, only the defendant and co-defendant were charged.
An issue at trial was whether the defendant had agreed with the co-defendant and Jackie to kidnap Vasquez, torture him, and get him to tell them the location of the drugs. Although at trial the defendant testified that he only intended to talk to Vasquez, in his statements to the police, he admitted knowing about his co-defendant’s preparation prior to looking for Vasquez.
On cross-examination of the lead detective, defense counsel asked: “Focusing on the notes and/or memory that you gained the night of November 2, 2001 as represented in your official and final report regarding this homicide investigation, that there is no specific reference or mention about a plan to kidnap as between my client and [the shooter]?” The detective replied: “That’s not what I was told by Jackie Gonzalez.” At this point, defense counsel objected on hearsay grounds because Jackie did not testify at trial. Defense counsel also requested a mistrial. The trial court denied the mistrial, but instructed the jury to disregard the statement.
On appeal, the defendant contends that the detective’s statement: (a) was inadmissible hearsay; (b) provided the only direct evidence that the defendant agreed to the plan to kidnap the victim; and (c) was so prejudicial that it vitiated the defendant’s right to a fair trial. The State asserts that the statement did not vitiate the entire trial. We agree with the State.
First, we are not convinced that the detective’s statement constitutes hearsay evidence. See § 90.801(1)(2), Fla. Stat. (2006). The statement was an attempt to answer defense counsel’s extremely confusing question. Defense counsel started out by referring to the contents of the detective’s report. Then, he vaguely mentioned a plan to kidnap between the defendant and the co-defendant. Defense counsel did not ask the detective if anyone stated that the defendant had agreed to *434 the kidnapping. Thus, it is hard to determine what, if anything, was asserted for the truth.
Second, even if the jury could have understood the statement was asserted as truth that Jackie’s statement implied the defendant’s agreement to the kidnapping, the statement was isolated. Neither the detective nor the prosecutor referred to the statement again throughout the trial. Thus, the trial court’s prompt instruction that the jury disregard the statement was sufficient to cure any harm. See Barnes v. State, 470 So.2d 851 (Fla. 1st DCA 1985).
Finally, we find there was other competent, substantial evidence from which the jury could have inferred the defendant’s intent to participate in the kidnapping. See Jacobs v. State, 396 So.2d 713, 716 (Fla.1981). The defendant knew about, and even drove, the van with the removed tag and the duct tape and hammer. Additionally, the defendant admitted that he went with the co-defendant even after the co-defendant indicated he intended to torture Vasquez. In light of this evidence, the jury reasonably could have disbelieved the defendant’s trial testimony that he only intended to question Vasquez.
Accordingly, we affirm the judgment of conviction and sentence entered below.
Affirmed.
SALTER, J., concurs.