[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-15312
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-22307-JEM

MAIKER VAZQUEZ,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 13, 2020)

Before JORDAN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Maiker Vazquez, a counseled Florida prisoner, appeals the denial of his 28 U.S.C. § 2254 habeas corpus petition. We granted a certificate of appealability ("COA") as to whether the state court unreasonably applied clearly established federal law or relied on an unreasonable determination of the facts when it denied Vazquez's claim that his Sixth Amendment right to confront witnesses was violated when a detective stated during cross-examination that a non-testifying witness incriminated Vazquez. Because Vazquez has not shown that the detective's statement resulted in "actual prejudice," we must affirm the denial of his § 2254 petition.

## I.

A Florida grand jury indicted Vazquez for first-degree murder, attempted first-degree murder, attempted kidnapping with a firearm, and possession of a firearm by a convicted felon. The Third District Court of Appeal summarized the facts on direct appeal. *Vazquez v. State*, 8 So. 3d 432 (Fla. Dist. Ct. App. 2009).

According to that summary, Vazquez agreed to find a buyer for a large amount of Ecstasy pills that an acquaintance wanted to sell. *Id.* at 433. Louis Vasquez (no relation), who also went by the nickname "Seaworld,"[1] introduced Vazquez to a buyer, but the buyer took the pills without paying for them. *Id.* Vazquez, his codefendant Hugo Martinez, and Martinez's girlfriend, Jackie Gonzalez, began

---

[1] To avoid confusion, we refer to Louis Vazquez as "Seaworld" throughout this opinion.

looking for Seaworld in order to track down the buyer. *Id.* Martinez and Gonzalez obtained a van and removed the van's tag. *Id.* Martinez carried a gun and put duct tape and a hammer in the van. *Id.* Sometime later, Vazquez was driving Martinez and Gonzalez in the van when they spotted Seaworld. *Id.* Martinez got out and confronted Seaworld. *Id.* A struggle ensued, and Martinez shot Seaworld twice. *Id.* Vazquez then picked up Martinez and drove off. *Id.* The police later stopped the van, and Martinez and Gonzalez submitted to arrest. *Id.* Vazquez fled, but was caught and arrested. *Id.* The state charged only Vazquez and Martinez. *Id.*

The prosecution's theory of the case was that Vazquez had agreed with Martinez to kidnap and torture Seaworld to obtain information about the location of the drugs. The defense maintained that Vazquez intended only to talk to Seaworld and was not aware of Martinez's plan to kidnap and torture the victim.

Detective Brajdic testified for the state about the investigation. He spoke to Vazquez at the scene of the arrest. According to Brajdic, Vazquez stated that Martinez was looking for Seaworld because he had a problem over money, and that he knew Martinez was armed with a handgun before the shooting occurred. Brajdic testified that Gonzalez was not charged because he saw that she had been beaten.

During cross-examination, the following exchange took place:

> [DEFENSE COUNSEL]: In terms of looking at various things that are contained in [your report], would you agree with me that there's no specific representation by yourself as to a plan and agreement between

3

Elvis, who we call Hugo [Martinez], and my client as to an actual crime of kidnapping in [page 12] of your report as memorialized?

[BRAJDIC]:  I'm sorry, could you please say that again?

[DEFENSE COUNSEL]:  I'll try to make it shorter.  Focusing on the notes and/or memory that you gained on the night of November 2, 2001, as represented in your official and final police report regarding this homicide investigation, that there is no specific reference or mention about a plan to kidnap as between and agreed between my client and Hugo Martinez?

[BRAJDIC]:  That's not what I was told by Jackie Gonzalez.

Defense counsel objected on hearsay grounds and requested a sidebar.  At sidebar, defense counsel moved for a mistrial, arguing that the detective injected a damaging hearsay statement from Gonzalez, who did not testify at trial, that was central to the case.  The trial court denied the motion for a mistrial, but after sidebar gave the jury the following instruction:  "Members of the jury, please disregard the last comment by Detective Brajdic on the stand, it was not responsive to the question."

Another detective who interrogated Vazquez testified that Vazquez said he was aware of Martinez's plan to "abduct" and "torture" Seaworld for information. According to the detective, Vazquez stated that Martinez's plan was to get a large vehicle so that he could abduct Seaworld, tie him up with duct tape, and force him to reveal the location of the drugs or money.  The state also introduced a recorded statement from Vazquez, which was consistent with the detective's testimony.

4

Vazquez testified in his defense, stating that he was not aware of Martinez's plan until after the incident. Vazquez testified that he simply wanted to find the victim to talk to him, and that he was not aware of Martinez's plan or of the items in the van. Vazquez also explained that his comments to the detective about Martinez's plans were simply after-the-fact guesses, not admissions of prior knowledge.

The jury convicted Vazquez of second-degree murder and attempted kidnapping. On direct appeal, Vazquez argued that Detective Brajdic's hearsay statement—"That's not what I was told by Jackie Gonzalez"—was prejudicial and violated his right to a fair trial because it was the only direct evidence that he had agreed to kidnap Seaworld.

The Third District Court of Appeal affirmed Vazquez's conviction and sentence. *Vazquez*, 8 So. 3d at 434. The court found that (a) the statement did not necessarily constitute hearsay; (b) even if the statement was hearsay, it was "isolated," and the trial court's prompt instruction "was sufficient to cure any harm"; and (c) there was "other competent, substantial evidence from which the jury could have inferred [Vazquez's] intent to participate in the kidnapping." *See id.* at 433–34. On that final point, the state appellate court explained that "[Vazquez] knew about, and even drove, the van with the removed tag and the duct tape and hammer. Additionally, [Vazquez] admitted that he went with [Martinez] even after [Martinez] indicated he intended to torture [Seaworld]." *Id.*

5

In June 2012, after pursuing state post-conviction remedies, Vazquez filed the subject 28 U.S.C. § 2254 petition for a writ of habeas corpus.  Among other claims, Vazquez argued that Detective Brajdic's hearsay statement that Gonzalez incriminated him violated his Sixth Amendment right to confront the witnesses against him and was so prejudicial as to vitiate his right to a fair trial.

The district court initially dismissed Vazquez's § 2254 petition *sua sponte* for failure to exhaust state remedies.  Finding that the state had expressly waived its exhaustion defense, we reversed and remanded for consideration of the merits of Vazquez's Confrontation Clause claim.  *See Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964 (11th Cir. 2016).

On remand, the district court, adopting a magistrate judge's report and recommendation, denied the § 2254 petition.  In essence, the court concluded that the Third District Court of Appeal's decision—that the statement was harmless in light of the curative instruction and other evidence—was not so unreasonable as to warrant habeas relief.  Vazquez then appealed the denial of his § 2254 petition to this Court, and we granted the COA as set forth at the outset of this opinion.

## II.

We review *de novo* a district court's denial of a 28 U.S.C. § 2254 petition, "but we owe deference to the final judgment of the state court." *Reed v. Sec'y, Fla. Dep't of Corr.*, 593 F.3d 1217, 1239 (11th Cir. 2010) (quotation marks omitted).  In

6

particular, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts cannot grant habeas relief on claims adjudicated on the merits in state court unless the state court's decision (a) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (b) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Vazquez's claim arises under the Confrontation Clause.  The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The Sixth Amendment prohibits the introduction of out-of-court testimonial statements unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant.  *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

7

Constitutional violations, including violations of the Confrontation Clause, are subject to harmless-error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 683–84 (1986); *Chapman v. California*, 386 U.S. 18, 23–24 (1967). "The test for whether a federal constitutional error was harmless depends on the procedural posture of the case." *Davis v. Ayala*, 576 U.S. ___, 135 S. Ct. 2187, 2197 (2015). On direct review, the government bears the burden of proving that the error was harmless beyond a reasonable doubt. *Chapman*, 386 U.S. at 24.

In a collateral habeas proceeding, however, the question is whether a constitutional error resulted in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (*quoting United States v. Lane*, 474 U.S. 438, 449 (1986)). "Under this test, relief is proper only if the federal court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *Davis*, 135 S. Ct. 2197–98 (quotation marks omitted). "There must be more than a 'reasonable possibility' that the error was harmful." *Id.* at 2198 (quoting *Brecht*, 507 U.S. at 637). "Harmlessness under the *Brecht* standard is a question of law that we review *de novo*," *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012), and we consider the constitutional error "in relation to all else that happened at trial," *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1114 (11th Cir. 2012) (quotation marks omitted);

*see also id*. at 1111 n.26 (declining to "phrase the *Brecht* requirement as a burden of proof").

According to the Supreme Court, "the *Brecht* standard 'subsumes' the requirements that § 2254(d) imposes when a federal habeas petitioner contests a state court's determination that a constitutional error was harmless." *Id.* (quoting *Fry v. Pliler*, 551 U.S. 112, 120 (2007)). Therefore, federal courts need not formally apply both the *Brecht* standard and AEDPA-deference, *see Fry*, 551 U.S. at 120, though ultimately both tests must be met for courts to grant habeas relief, *see Mansfield*, 679 F.3d at 1307–08. Accordingly, the failure to satisfy either the *Brecht* standard or § 2254(d)(1) warrants denial of the habeas petition.

Here, assuming a violation of Vazquez's Confrontation Clause rights, Detective Brajdic's statement—"That's not what I was told by Jackie Gonzalez"— did not have a "substantial or injurious effect or influence" on the jury's verdict. Nor can we conclude that the state appellate court's decision was objectively unreasonable. *See Davis*, 135 S. Ct. 2197–98. The state appellate court reasonably could have concluded[2] that the error was harmless in light of the isolated nature of the comment, the trial court's prompt curative instruction, and other substantial

---

[2] The state court did not directly address Vazquez's claim under the Confrontation Clause or *Chapman*'s harmlessness standard for constitutional trial error. Therefore, we treat the state court's decision as a summary denial of the claim on the merits and ask whether "there was [any] reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

9

evidence that Vazquez knew of and agreed to Martinez's plan to abduct Seaworld for the purpose of getting information about the location of money or drugs.

First, the improper comment was isolated. After the detective made the hearsay statement, the state did not mention it or attempt to capitalize on it.

Second, the trial court promptly instructed the jury to disregard the comment. While the court did not expressly inform the jury that the comment was improper, we nevertheless presume that the jury followed the court's instruction to disregard the comment. *See United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992) ("A curative instruction purges the taint of a prejudicial remark because a jury is presumed to follow jury instructions." (quotation marks omitted)). The court's instruction may not have rendered Detective Brajdic's statement completely harmless, but it certainly lessened any prejudicial impact.

Third, and most important, we agree with the state appellate court that "there was other competent, substantial evidence from which the jury could have inferred the defendant's intent to participate in the kidnapping." *Vazquez*, 8 So. 3d at 434. The state's evidence showed that Vazquez drove Martinez and Gonzalez to look for Seaworld in a van that lacked a license plate and contained duct tape and a hammer. When they spotted Seaworld, Martinez got out, confronted Seaworld, and ultimately shot him.

While at trial Vazquez denied prior knowledge of Martinez's plan to abduct and potentially torture Seaworld for information, the state presented evidence of Vazquez's own statements to the contrary. Specifically, a detective testified that, during an interrogation, Vazquez admitted that he knew of Martinez's plan to kidnap and torture Seaworld but drove Martinez around, anyway. The state also introduced a recorded statement from Vazquez, in which he admitted that he knew Martinez's plan to kidnap Seaworld and that there was duct tape in the van, which Martinez would use to tie up Seaworld. In sum, Detective Brajdic's statement about what Gonzalez told him was cumulative of other, substantial evidence of Vazquez's intent.

For all these reasons, we cannot say that the hearsay statement was so prejudicial as to call into question the fundamental fairness of the trial. Assuming error, the Confrontation Clause error was isolated, quickly remedied by a curative instruction, and not so prejudicial in light of other, substantial evidence of Vazquez's intent that it created "more than a 'reasonable possibility' that the error was harmful." *Davis*, 135 S. Ct. at 2198. In other words, we do not have "ha[ve] grave doubt about whether [the error] had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 2197–98. Nor can we conclude that the state appellate court's decision was objectively unreasonable in its application of the law or its determination of the facts. Where, as here, "fairminded jurists could disagree

11

on the correctness of the state court's decision," *Richter*, 562 U.S. at 101 (quotation marks omitted), we must give the state court's decision the benefit of the doubt. Accordingly, we affirm.

**AFFIRMED.**