Filed 4/29/24  P. v. Robillard CA1/1

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

<table>
<tr><td>THE PEOPLE,<br><br>      Plaintiff and Respondent,<br>v.<br>MICHAEL ROBILLARD,<br><br>      Defendant and Appellant.</td><td>A168085<br><br>(San Mateo County<br>Super. Ct. No. 21-NF-006085-A)</td></tr>
</table>

A jury convicted defendant Michael Robillard of eight offenses, including second degree robbery.  Robillard raises four arguments on appeal.  First, he contends his constitutional rights were violated when his attorney conceded guilt on all charges except the robbery charge in opening and closing arguments.  Second, he argues the trial court erred in finding he was competent to stand trial.  Third, he argues that he was deprived of effective assistance of counsel.  Finally, he contends the court abused its discretion in ordering him restrained during trial.  We reject his contentions and affirm.

## I. BACKGROUND

In May 2021, Oakland police officers were dispatched to a gas station based on reports of a burglary.  Upon arriving at the scene, the officers found Robillard asleep in the backseat of a truck located in a garage.  After officers woke him up, Robillard climbed into the driver's seat and started the vehicle,

ignoring commands from the officers to put his hands up.  Robillard then repeatedly drove into the garage door until it broke, and he drove away, striking a police vehicle in the process.

Approximately a week later, after receiving a report of a stolen vehicle, San Mateo police officers were dispatched to a shopping center.  The officers located the unoccupied truck parked near a store and placed a tire deflation device on the vehicle "to help deter a pursuit."  A little later, the officers observed Robillard enter the truck.  After Robillard started driving, police cars approached the vehicle with their lights and sirens on.  Robillard sped off, and the police pursued him.

After losing sight of Robillard, officers eventually located the truck crashed into a tree.  They found Robillard standing in a nearby pond.  Robillard was in the water for almost two hours before surrendering.  Body camera footage captured some of the pursuit and Robillard's surrender.

Less than a week later, while Robillard was in custody and being transported to a medical center, Robillard escaped the transport vehicle.  He was wearing a jail uniform and was secured with chains and wrist cuffs.

Around the time Robillard escaped custody, Alvaro Pirirboch was parking his car.  As Pirirboch got out of his car, Robillard approached him from behind and yelled at him to hand over his car keys and his phone.  Pirirboch initially refused, but when Robillard grabbed him by his shirt and made a "boxing gesture," Pirirboch gave Robillard his keys and phone.  After Robillard tried, but was unable, to start Pirirboch's car, he ran away.

An officer later spotted Robillard running through a parking lot.  The officer grabbed Robillard as he was scaling a fence, but Robillard kicked the officer and climbed over the fence.  The officer caught Robillard as he was

2

climbing over a second fence.  Body camera footage captured the pursuit. Officers recovered Pirirboch's phone near the first fence.

In an amended information filed March 2022, Robillard was charged with seven felonies and one misdemeanor:  second degree robbery (Pen. Code,[1] § 212.5, subd. (c); count 1); attempted carjacking (§§ 215, subd. (a), 664; count 2); fleeing a pursuing peace officer and driving against traffic (Veh. Code, § 2800.4; count 3); fleeing a pursuing peace officer while driving recklessly (Veh. Code, § 2800.2, subd. (a); count 4); escape by force or violence (§ 4532, subd. (b)(2); count 5); resisting an executive officer (§ 69; count 6); receiving stolen property (§ 496d, subd. (a); count 7); and misdemeanor resisting a peace officer (§ 148, subd. (a)(1); count 8).  The information alleged as to the first seven counts that Robillard had suffered five prior serious or violent felony convictions.  (§§ 667, 1170.12, subd. (c)(1), 12022.1.)  The information further alleged as to count seven that Robillard had suffered three prior auto theft convictions.  (§ 666.5.)  Robillard waived a jury trial as to the prior conviction allegations.

Before trial, defense counsel declared a doubt as to Robillard's competency.  The trial court suspended proceedings, and three competency reports were thereafter submitted to the court.  Based on the reports, the court found Robillard competent to stand trial and reinstated criminal proceedings.

The jury found Robillard guilty as charged.  The trial court found the prior conviction allegations true and sentenced Robillard to 25 years to life plus four years.

---

[1] Undesignated statutory references are to the Penal Code.

## II. DISCUSSION

### A. *Defense Counsel's Concessions of Guilt*

Robillard contends his constitutional rights were violated when, during opening and closing arguments, his attorney conceded guilt on all charges except for the robbery charge. The People respond that defense counsel never explicitly conceded guilt, and even if he had, Robillard is not entitled to reversal because he never objected to his counsel's trial strategy. We agree with the People that Robillard has not demonstrated reversible error.

In his opening statement, defense counsel stated that he probably would not question many of the witnesses because "intentionality is the defense here." He emphasized that "Mr. Robillard's intention was to escape. He did not want to return to jail." Counsel asked the jury to decide whether this intent was "consistent with the intentionality necessary to commit a robbery" but did not address any of the other charges.

In defense counsel's closing statement, he again focused on the intent element of the robbery charge. He did not dispute that Robillard took property that did not belong to him against Pirirboch's will. Defense counsel argued instead that Robillard did not have the specific intent required to commit a robbery because he took Pirirboch's property as "a means of escape." "[Robillard] was going to do whatever he had to do, as the prosecutor and I agree, to get away." Defense counsel told the jury, "You have effectively four incidents of Mr. Robillard escaping," and he summarized those incidents. He also said he "agree[d] with the prosecutor in terms of the attempt[ed]" carjacking, stating that Robillard attempted to take Pirirboch's vehicle "to make good his escape." Counsel declined to address the resisting arrest charge because it was "part and parcel of the escape."

4

In arguing that his trial counsel violated his constitutional right to maintain his innocence, Robillard directs this court to *McCoy v. Louisiana* (2018) 584 U.S. 414 [138 S.Ct. 1500, 200 L.Ed.2d 821] (*McCoy*) and *Florida v. Nixon* (2004) 543 U.S. 175 [125 S.Ct. 551, 160 L.Ed.2d 565] (*Nixon*).

*McCoy* held that an attorney must abide by his client's expressed objective of innocence, even if pursuing that defense is against the attorney's better judgment and experience. (*McCoy*, *supra*, 584 U.S. at p. 426.) The defendant in *McCoy* was accused of murdering three individuals but maintained his factual innocence of the crimes. (*Id.* at pp. 418–420.) Despite this, defense counsel conceded at trial that the evidence would show that the defendant killed the victims and argued instead that the defendant did not commit first degree murder. (*Id.* at pp. 419–420 & fn. 1.) After objecting at trial to his counsel's concessions of guilt, the defendant argued unsuccessfully in a new trial motion that his attorney's concessions violated his constitutional rights. (*Id.* at pp. 419–420.) The state supreme court affirmed the trial court's decision. (*Id.* at p. 420.)

The Supreme Court of the United States granted certiorari in *McCoy* to determine "whether it is unconstitutional to allow defense counsel to concede guilt over the defendant's intransigent and unambiguous objection." (*McCoy*, *supra*, 584 U.S. at p. 420.) The court concluded counsel may not concede a client's guilt of charged crimes "over the client's intransigent objection to that admission." (*Id.* at p. 426.)

In reaching this conclusion, the *McCoy* court distinguished the case from *Nixon*, *supra*, 543 U.S. 175. (*McCoy*, *supra*, 584 U.S. at pp. 415, 417–418.) In *Nixon*, the defendant was charged with murder. Defense counsel concluded the best strategy to obtain leniency in sentencing was to concede guilt. (*Nixon*, at pp. 180–181.) Defense counsel explained the proposed

5

strategy to Nixon, but Nixon was "generally unresponsive" and "never verbally approved or protested" the strategy. (*Id.* at p. 181.) Defense counsel then conceded guilt in his opening and closing statements. (*Id.* at pp. 182– 184.) The jury returned guilty verdicts and recommended the death penalty. (*Id.* at p. 184.)

The *McCoy* court observed that defense counsel in *Nixon* "did not negate Nixon's autonomy by overriding Nixon's desired defense objective," for Nixon never asserted any such objective. (*McCoy*, *supra*, 584 U.S. at p. 424.) Nixon complained about the admission of his guilt only after trial, in comparison to McCoy, who repeatedly voiced his objection to conceding guilt throughout the proceedings. (*Id.* at p. 415.) *McCoy* therefore held, "If a client declines to participate in his defense, then an attorney may permissibly guide the defense pursuant to the strategy she believes to be in the defendant's best interest. Presented with express statements of the client's will to maintain innocence, however, counsel may not steer the ship the other way." (*Id.* at p. 424.)

California courts have consistently held that *McCoy* applies only where the record affirmatively shows that "defendant's plain objective is to maintain his innocence and pursue an acquittal." (*People v. Eddy* (2019) 33 Cal.App.5th 472, 482; see *People v. Villa* (2020) 55 Cal.App.5th 1042, 1056 [*McCoy* applies "only where defendant actively opposes counsel's concession"]; *People v. Bernal* (2019) 42 Cal.App.5th 1160, 1166 ["*McCoy* does not assist defendant because the record here does not reflect a directive to counsel that defendant's objective at trial was to maintain innocence on all charges."]; *People v. Burns* (2019) 38 Cal.App.5th 776, 784 ["*McCoy* is . . . predicated on a client's express objection to defense counsel's concession strategy"].)

6

Robillard acknowledges there is nothing in the record showing his disagreement with his counsel's decision to concede guilt on some of the charges. He contends, however, that the court should have held an in camera hearing to assess his understanding of counsel's strategy "in light of the questions as to [his] competency." We disagree for two reasons.

First, the trial court determined prior to defense counsel's concessions of guilt that Robillard was competent to stand trial. As we explain below, substantial evidence supports this conclusion. Therefore, there is no reason to consider Robillard's competency a factor here.

Second, Robillard cites no authority to support his assertion that the trial court was required to ascertain his agreement with his counsel's trial strategy. While an attorney has an obligation "to consult with the defendant on important decisions" (*Strickland v. Washington* (1984) 466 U.S. 668, 688 [104 S.Ct. 2052, 80 L.Ed.2d 674]), it is "not the trial court's duty to inquire whether the defendant agrees with his counsel's decision to make a concession, at least where . . . there is no explicit indication the defendant disagrees with his attorney's tactical approach to presenting the defense." (*People v. Cain* (1995) 10 Cal.4th 1, 30, overruled on another ground in *People v. Moon* (2005) 37 Cal.4th 1, 17.) In this case, there is no evidence defense counsel failed in his duties. As such, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." (*People v. Maury* (2003) 30 Cal.4th 342, 389; see *People v. Franks* (2019) 35 Cal.App.5th 883, 891, fn. 2 [appellate court will not presume defense counsel failed to consult defendant about counsel's trial strategy].)

Robillard also attempts to distinguish *Nixon* by noting that the record there "demonstrate[d] beyond doubt that [defense counsel] fulfilled his duty

7

of consultation by informing Nixon of counsel's proposed strategy and its potential benefits." (*Nixon*, *supra*, 543 U.S. at p. 189.) Nothing in *Nixon* suggests, however, that an attorney violates his client's constitutional rights where, as here, the record is silent as to whether the attorney informed his client of counsel's proposed trial strategy. To hold otherwise would require us to presume error on appeal, which we cannot do. (See *People v. Franks*, *supra*, 35 Cal.App.5th at p. 891, fn. 2, citing *People v. Farrara* (1956) 46 Cal.2d 265, 268.)

Accordingly, because the record does not demonstrate Robillard's express disagreement with his counsel's proposed trial strategy, *McCoy* does not apply to defense counsel's concessions of guilt. (See *McCoy*, *supra*, 584 U.S. at pp. 415, 425.)

## B. Robillard's Competence to Stand Trial

Robillard next argues that his conviction must be reversed because the record shows he was incompetent to stand trial. We disagree that reversal is required here.

### 1. Guiding Principles

" ' "Both the due process clause of the Fourteenth Amendment to the United States Constitution and state law prohibit the state from trying or convicting a criminal defendant while he or she is mentally incompetent." ' " (*People v. Murdoch* (2011) 194 Cal.App.4th 230, 236; see *People v. Marshall* (1997) 15 Cal.4th 1, 31.) A conviction or sentence imposed upon a person at a time when they are not mentally competent must be vacated. (*People v. Buenrostro* (2018) 6 Cal.5th 367, 386.)

A defendant is mentally incompetent "if, as a result of a mental health disorder or developmental disability, the defendant is unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a

defense in a rational manner." (§ 1367, subd. (a).) A defendant is presumed to be competent unless the trial of fact finds by "a preponderance of the evidence that the defendant is mentally incompetent." (§ 1369, subd. (c)(3).) The party claiming incompetence bears the burden of proof. (*People v. Buenrostro*, *supra*, 6 Cal.5th at p. 387.)

### 2. Additional Background

At a preliminary hearing in July 2021, defense counsel declared a doubt about Robillard's competency. The trial court suspended criminal proceedings and appointed two psychologists, Drs. Rami Mogannam and David F. Berke, to evaluate Robillard. Because the psychologists' reports were transmitted to this court as part of a confidential clerk's transcript, we will limit our discussion of the information in the reports to that addressed in the parties' appellate briefs, which were filed without redactions or a sealing request. (See Cal. Rules of Court, rule 8.47(c)(1), (2) [to maintain confidentiality, a party may file a motion to file a document under seal]; *People v. Coddington* (2000) 23 Cal.4th 529, 617, fn. 38, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069 & fn. 13, and superseded by statute on other grounds as stated in *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1107, fn. 4.) We clarify or expand upon the facts discussed by the parties where necessary "to adequately consider the issues presented." (*In re M.T.* (2024) 106 Cal.App.5th 322, 328–329.)

Dr. Mogannam's August 18, 2021 report included results from a psychological test called the Miller Forensic Assessment of Symptoms Test (M-FAST), which is designed to detect the feigning of psychological symptoms. The report explained that a score above six on the test "suggests an individual may be overtly feigning symptoms." Robillard's score was 12,

9

and the report stated that this "suggest[s] he may be feigning psychiatric symptoms."

Dr. Mogannam concluded that Robillard was competent to stand trial. Although Robillard "did not demonstrate many competency related abilities," Dr. Mogannam attributed this to "a general lack of effort and overt feigning of symptoms" based on Robillard's score on the M-FAST and his refusal to answer basic questions.

Dr. Berke's September 2, 2021 report reached a different conclusion regarding Robillard's competency. Dr. Berke found that while Robillard demonstrated a basic understanding of the trial process, he was "impaired by his delusional thinking" and did not demonstrate "an ability to make rational decisions in relationship to his criminal-legal case" or an ability to assist in his defense.

Because the two reports from Drs. Mogannam and Berke were in conflict, the trial court appointed a third psychologist, Dr. E. Robert Cassidy, to evaluate Robillard. Dr. Cassidy submitted his report to the court on December 1, 2021.

In Dr. Cassidy's interview of Robillard, Robillard indicated that he had previously experienced hallucinations of a man named "Malcolm," but he denied that he was currently experiencing any hallucinations. Robillard also reported suffering a traumatic head injury in 2015.

Dr. Cassidy administered the Competency Assessment Instrument (CAI), which he described as a tool that "has long been used to empirically assess adjudicative competence." The CAI appears to be a series of competence-specific questions. Dr. Cassidy reported that Robillard responded to the questions "without any claims or overt evidence of" hallucinations or cognitive impairment. Rather, Robillard's responses were

10

"invariably precise, often relatively sophisticated and in accordance with known facts." Dr. Cassidy therefore concluded that Robillard was able to understand the nature and purpose of the legal proceedings and was able to cooperate in a rational manner with his trial counsel.

The parties submitted on the expert reports. Based on the reports and the arguments of counsel, the trial court found Robillard competent to stand trial, and it reinstated criminal proceedings.[2]

### 3. Analysis

Robillard contends his constitutional rights were violated when he was put on trial because substantial evidence that he was incompetent to stand trial is "clearly present" in the record.

We review the trial court's finding of competency for substantial evidence, viewing the record in the light most favorable to the verdict. (*People v. Lawley* (2002) 27 Cal.4th 102, 131.) " 'Evidence is substantial if it is reasonable, credible and of solid value.' " (*Ibid.*) " '[I]f the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder.' " (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

Here, as summarized *ante*, the record shows that two of the three doctors who evaluated Robillard concluded that he was competent to stand trial. As noted, the trial court agreed that Robillard was mentally competent, even though Robillard reported experiencing hallucinations.

---

[2] Robillard notes that after trial and before sentencing, his trial counsel declared a doubt as to his competency a second time. We need not discuss the facts pertaining to the second competency proceeding because Robillard does not claim that he was incompetent to be sentenced.

For at least three reasons, we conclude substantial evidence supports the trial court's finding that Robillard was competent to stand trial. First, Robillard received a high score on the M-FAST test administered by Dr. Mogannam, which suggests Robillard was feigning his mental health deficits. Second, the CAI test administered by Dr. Cassidy demonstrated that Robillard adequately understood the nature and purpose of the criminal proceedings and was able to assist in the preparation of his defense. Third, two of the three psychologists' observations of Robillard during their interviews with him indicate that he was not currently suffering from delusions, at least not to the extent that it was impacting his ability to stand trial. Contrary to Robillard's assertion, Dr. Cassidy's report does not indicate that Robillard was unable to maintain rational thought; rather, Dr. Cassidy observed that Robillard was coherent and "easily engaged in focused conversation," and he saw no evidence of any symptoms of a serious mental illness.

Robillard does not challenge the evidence supporting the trial court's competency finding as inherently improbable or incredible. (See *People v. Ennis* (2010) 190 Cal.App.4th 721, 728–729.) Thus, his contention that we should reverse his conviction because there is substantial evidence to support mental incompetence essentially asks us to reweigh the evidence differently than the trial court. This is beyond our purview. (*People v. Ghipriel* (2016) 1 Cal.App.5th 828, 832.) Indeed, " '[i]t is of no consequence that the [trier of fact] believing other evidence, or drawing different inferences, might have reached a contrary conclusion.' " (*Ibid.*) So long as *any* substantial evidence exists to support the trial court's finding of competency, we must affirm. (See *People v. Marshall, supra,* 15 Cal.4th at p. 31.) We will do so here.

12

Robillard asserts in a footnote that his trial attorney should have sought an examination by a forensic neuropsychologist, though he does not develop an argument that the failure to do so constitutes reversible error. We will "not consider [any] loose and disparate argument[] that [is] not clearly set out in a heading and supported by reasoned legal argument." (*Dinslage v. City and County of San Francisco* (2016) 5 Cal.App.5th 368, 377–378, fn. 3.) We also disregard the arguments Robillard raises for the first time in his reply brief regarding certain inferences that he believes should have been drawn from the evidence. "For obvious reasons of fairness, points raised for the first time in a reply brief will ordinarily not be considered." (*Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 809.)

## C. Ineffective Assistance of Counsel

Robillard argues that his trial counsel violated his right to effective assistance of counsel by conceding guilt on most of his charges and by submitting the question of Robillard's competency after the trial court received the third psychologist's report. We disagree.

To prevail on an ineffective assistance of counsel claim, the defendant ordinarily must show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) but for counsel's errors and/or omissions, the trial would have resulted in a more favorable outcome. (*In re Visciotti* (1996) 14 Cal.4th 325, 352.)

In this case, however, Robillard relies on a distinct line of authority to argue that his trial counsel's actions at trial require a presumption of prejudice. Under *United States v. Cronic* (1984) 466 U.S. 648 [104 S.Ct. 2039, 80 L.Ed.2d 657] (*Cronic*), if, "[a]s a result of counsel's performance, the prosecution's case was not subjected to meaningful adversarial testing, . . . there is a presumption that the result [of the trial] is unreliable and prejudice

13

need not be affirmatively shown." (*In re Visciotti*, *supra*, 14 Cal.4th at p. 351, citing *Cronic*, at pp. 658–659.)

The application of *Cronic* is limited. (*In re Visciotti*, *supra*, 14 Cal.4th at p. 353; *Cronic*, *supra*, 466 U.S. at pp. 658–660.) "Defendants have been relieved of the obligation to show prejudice only where counsel was either totally absent or was prevented from assisting the defendant at a critical stage." (*In re Visciotti*, at p. 353.) Where, as here, a claim of *Cronic* error is based on an attorney's failure to test the prosecutor's case, "the attorney's failure must be complete." (*Bell v. Cone* (2002) 535 U.S. 685, 697, 696 [122 S.Ct. 1843, 152 L.Ed.2d 914].)

We cannot conclude that defense counsel completely failed to subject the prosecutor's case to meaningful adversarial testing. (See *In re Avena* (1996) 12 Cal.4th 694, 727 [finding no *Cronic* error even though defense counsel's "representation was minimal at best"].) Rather, defense counsel's decision to acknowledge Robillard's culpability in certain counts was likely a tactical choice to refute the robbery charge, especially considering the strong evidence (which included video footage) supporting his guilt on the other charges. "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than sheer neglect." (*Yarborough v. Gentry* (2003) 540 U.S. 1, 8 [124 S.Ct. 1, 157 L.Ed.2d 1]; see *People v. Freeman* (1994) 8 Cal.4th 450, 498 ["Recognizing the importance of maintaining credibility before the jury, we have repeatedly rejected claims that counsel was ineffective in conceding various degrees of guilt."]; *People v. Jones* (1991) 53 Cal.3d 1115, 1150 ["It is within the permissible range of tactics for defense counsel to candidly recognize the weaknesses in the defense in closing argument."].) Nor does defense counsel's submission on the psychologists' reports constitute a complete

14

failure to test the prosecutor's case, even when combined with his concessions of guilt on some of the charges. Defense counsel was never " 'totally absent' " or " 'prevented' from assisting [Robillard] at trial." (*In re Avena*, at p. 727.)

As such, we must abide by the usual legal standards governing a defendant's claim of ineffective assistance of counsel. (See, e.g., *Strickland v. Washington*, *supra*, 466 U.S. at pp. 684–689.) But because Robillard has not addressed the elements of an ineffective assistance of counsel claim, we will not consider any such claim. (See *People v. Mitchell* (2008) 164 Cal.App.4th 442, 467 [deeming insufficient an argument that "merely presumes counsel's failure to object" was unreasonable and prejudicial].) We therefore reject Robillard's argument that his trial attorney violated his right to effective assistance of counsel.

## D. The Use of Restraints During Trial

Finally, Robillard contends the trial court abused its discretion when it ordered the use of restraints without finding that he posed a threat of violence or had a "present intent" to escape custody. We agree with the People that Robillard fails to show prejudice.

For trial, Robillard was placed in a "weighted chair," his hands were shackled, and he was in leg chains. On the second day of trial, outside the presence of the jury, defense counsel requested that Robillard's right hand be unshackled so that he could take notes. He informed the court that when a deputy removed the shackles from Robillard's right wrist earlier that morning, when the jury was not present, the deputy placed a "cuff" onto the arm of the weighted chair where it was "clearly visible." Robillard also "had concerns about being able to rise when the jury enters" and leaves. Defense counsel noted that the trial court was required to make certain findings before ordering a defendant restrained, and he stated that he had not "made

15

any kind of record" previously because "there aren't any shackles that are visible to the jurors."

The trial court responded, "[Robillard] is able to rise now." The court ordered Robillard's right hand be released from shackles, and it directed the placement of the cuff so that it was hidden under Robillard's clothing. "But everything else will remain on." After deputies unshackled Robillard's right hand, defense counsel confirmed the restraints were not visible.

" '[A] defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of a manifest need for such restraints.' " (*People v. Foster* (2010) 50 Cal.4th 1301, 1321; see *Deck v. Missouri* (2005) 544 U.S. 622, 629 [125 S.Ct. 2007, 161 L.Ed.2d 953] ["the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of discretion, that they are justified by a state interest specific to a particular trial"], abrogated on other grounds in *Fry v. Pliler* (2007) 551 U.S. 112 [127 S.Ct. 2321, 168 L.Ed.2d 16].)

But even absent a showing of manifest need, the verdict will not be reversed unless the defendant demonstrates prejudice. " '[W]e have consistently held that courtroom shackling, even if error, [is] harmless if there is no evidence that the jury saw the restraints, or that the shackles impaired or prejudiced the defendant's right to testify or participate in his defense.' " (*People v. Williams* (2015) 61 Cal.4th 1244, 1259; accord, *People v. Young* (2019) 7 Cal.5th 905, 935.)

There is no evidence here that Robillard's restraints were visible to the jury at any time during the trial. At most, the record indicates that a cuff placed on Robillard's chair was briefly visible when the jury was not present. Nor is there any suggestion the restraints impaired Robillard's ability to

16

testify or participate in his defense.  While defense counsel asked that Robillard's right hand be unshackled so that he could take notes, Robillard does not claim the restraints actually impaired or prejudiced his ability to participate in his defense.

## III. DISPOSITION

The judgment is affirmed.

17

LANGHORNE WILSON, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A168085
*People v. Robillard*